F. H. McCLINTOCK CO. v. TRUXELL SALES & SERVICE, INC.

1. PRINCIPAL AND AGENT—AUTOMOBILE DISTRIBUTOR'S AGREEMENT
    WITH DEALER—CANCELLATION.
       Under agreement relative to automobiles between defendant
       distributor, designated as a "direct dealer," and plaintiff,
       designated as an "associate dealer," in which defendant was
       authorized to terminate the agreement upon 90 days' written
       notice and in which there was contained a provision that de-
       fendant direct dealer should have the right to accept, in
       whole or in part, any or all orders received, and not be liable
       for loss or damage resulting from failure to ship or deliver
       goods ordered, plaintiff may not recover loss of profits arising
       from failure to deliver cars it ordered during 90-day period
       following cancellation by defendant where such orders were
       never accepted.

2. CONTRACTS—CONSTRUCTION.
       In construing a contract a court must consider it in its entirety
       and cannot remake it for the parties, nor, by deletion, give it
       a tenor contrary to its explicit terms.

Appeal from Ingham; Carr (Leland W.), J. Sub-
mitted February 15, 1941. (Docket No. 124, Cal-
endar No. 41,440.) Decided April 8, 1941.

Bill by F. H. McClintock Company, a corporation,
doing business as Anderson & Strickland, against
Truxell Sales & Service, Inc., a Michigan corpora-
tion, for damages for breach of contract and for in-
junctive relief. Decree for plaintiff. Defendant
appeals. Bill dismissed.

*Watson & Amerson,* for plaintiff.

*Pierce, Planck & Ramsey,* for defendant.

BUSHNELL, J. F. H. McClintock Company is a
Michigan corporation engaged in the business of

selling and servicing new and used automobiles in the city of Lansing. Its president is F. H. McClintock, its other officers being W. H. Anderson and William Strickland.

Prior to June 1, 1938, the corporation had been selling DeSoto and Plymouth cars manufactured by the Chrysler Corporation. It ceased selling these products and began to sell Cadillac and LaSalle cars manufactured by General Motors Corporation. Prior to June 1, 1938, the corporation had procured its DeSoto and Plymouth cars from defendant Truxell Sales & Service, Inc., a distributor or direct dealer of Chrysler Corporation. On that date defendant executed three collateral agreements with Anderson & Strickland. These agreements outlined in detail the relationship between defendant as direct dealer and Anderson & Strickland as associate dealer of DeSoto and Plymouth cars. They were signed Anderson & Strickland, by W. H. Anderson, partner. These agreements contained a provision authorizing termination by either party— "upon not less than 90 or more than 95 days' written notice by direct dealer or upon not less than 15 or more than 20 days' written notice by associate dealer."

Following the making of these agreements, defendant sold Anderson & Strickland a number of DeSoto and Plymouth cars, but on August 21, 1939, it notified Anderson & Strickland by letter that the agreements between the parties were terminated, "effective immediately." On August 30, September 7 and September 28, 1939, Anderson & Strickland ordered additional cars. Defendant ignored these orders.

On September 27, 1939, suit was begun by the plaintiff corporation "d.b.a. Anderson & Strickland," on the theory that the agreements between

defendant and Anderson & Strickland were agreements between defendant and plaintiff corporation. In this suit, plaintiff claimed damages for loss of sales by reason of defendant's failure to fill Anderson & Strickland orders during the 90-day period subsequent to the attempted termination of the agreements. Plaintiff also sought injunctive relief. Defendant in its answer denied that it ever had any written agreement with plaintiff, but did admit the existence of agreements between it and a "partnership consisting of one Anderson and one Strickland."

During the 90-day period following the so-called cancellation by defendant there was a strike in progress in some of the Chrysler plants. The undisputed testimony shows that during this period defendant was able to obtain only 7 DeSotos and 25 Plymouths. Five of the DeSotos and 14 of the Plymouths were required to fill defendant's own retail orders, and defendant was unable to fill all of the orders of its other associate dealers during this 90-day period.

The trial court held the agreements constituted a contract between defendant and plaintiff corporations and could not be terminated by defendant without giving plaintiff 90 days' notice. So far as damages were concerned, the court found that defendant was unable to obtain more cars than the number above mentioned because of the strike. The court concluded that:

"Based on prior operations, it is a fair conclusion that plaintiff might have sold, during the period in question, four Plymouths. So far as the record is concerned, I think it is a fair inference that that number might have been furnished by defendant to plaintiff under the contract. It scarcely seems to me, however, that plaintiff is in position to claim

that both DeSotos available for associate dealers should, and would, have been delivered to plaintiff had the agreement remained in force until November 20th. The computation of damages in a situation of this character is difficult and somewhat speculative. I am impressed, however, that if such damages are awarded to plaintiff on the basis of the sale of four Plymouth automobiles and of one DeSoto that neither party may properly claim to be aggrieved. On this premise it follows that plaintiff lost in profits the sum of $870.97. The proofs indicate that plaintiff was not able to lessen its overhead expense because of the loss of business from defendant. In consequence it is entitled to a decree for the amount stated. The contract specifically provides that a termination of the contract 'shall operate as a cancellation of all unfilled orders for motor vehicles.' The determination of damages has, of course, been reached with this provision of the contract in mind.''

The agreement in question contained the following clause:

''Direct dealer shall have the right to accept, in whole or in part, any or all orders received, and shall not be liable for any loss or damage resulting from its failure to ship or deliver goods ordered.''

We are obliged to consider the agreement in its entirety, including the effect of the above-quoted clause as well as others. We cannot make a new agreement for the parties. Defendant never accepted the orders on which plaintiff's claim for damages is based. By the explicit language of the agreement, it cannot be held ''liable for any loss or damages resulting from its failure to ship and deliver goods ordered.'' As was said in *Carlson* v. *Johnson,* 275 Mich. 35:

"We cannot remake the contract, nor, by deletion, give it a tenor contrary to its explicit terms. Plaintiffs accepted the terms and must abide the stated conditions."

The damages awarded by the trial court of $870.97 to cover plaintiff's loss of profits cannot be sustained in the face of the language of the agreement. Because of this view of the case the other questions raised become immaterial and need not be decided.

The decree of the court below is vacated and one may be entered here dismissing plaintiff's bill of complaint, with costs to appellant.

SHARPE, C. J., and BOYLES, CHANDLER, NORTH, MC-ALLISTER, WIEST, and BUTZEL, JJ., concurred.