(<em>September</em> 22, 1958.)

ON APPELLEE'S PETITION FOR REARGUMENT

SOUTHERLAND, C. J.:

In our first opinion in this case, dated April 30, 1958, we held that the judgment must be remanded for a new trial because of error in respect of the issue of recoverable damages. In our supplemental opinion of July 11, 1958, we held that the new trial should be limited to that issue.

Appellee Quimby has filed a petition for reargument raising a number of questions not presented in his original brief on the merits.

The first two points allege error in the rulings of the court below respecting certain claimed items of damage.

1. Quimby says that his claim in respect of loss of profits was not limited to loss of profits for 90 days, and that the ruling below to that effect is erroneous. He claims loss of profits for "a reasonable period after May 13, 1951."

Conceding that this question is not, strictly speaking, presented by this appeal, he urges that if this Court wishes to instruct the Superior Court upon the point, as he appears to believe desirable, a full reargument of the question should be had.

Quimby is probably correct in saying that he is not entitled, as of right, to present this question to us, since he did not take a cross-appeal. See 3 *Am. Jur. "Appeal and Error"*, §§ 865-866; 5 *C. J. S. Appeal and Error*, § 1498; and *cf. Wilmington Trust Co. v. Highfield*, 4 *W. W. Harr.* (34 *Del.*) 394, 153 *A.* 864, 865. We might, therefore, remand the case and leave the point open, in which event, if the trial court should adhere to its prior ruling and Quimby should be dissatisfied with the amount awarded, another appeal might follow. Such circuity of action is certainly undesirable. We prefer to decide the matter finally.

. Paragraph 7 of the 1944 dealer's contract provides for immediate termination of the contract upon the happening of any one of seven specified events.

Paragraph 8 goes on to provide:

"It is also recognized that certain other conditions may arise under which either party may desire to terminate this agreement by giving reasonable notice to the other party. Accordingly, it is agreed that this agreement may be terminated, at any time not less than ninety (90) or more than ninety-five (95) days' written notice by Chrysler or upon not less than fifteen (15) or more than twenty (20) days' written notice by Direct Dealer, but either of these periods may be reduced by mutual written consent of Direct Dealer and Chrysler."

■ Quimby argues that it is unrealistic to suppose that Chrysler would enforce the provision. This argument misses the point. The quoted language confers upon either party an absolute right to terminate. It is a mutual covenant, and we know of no reason why it should not be given effect. Quimby really asks that we rewrite the contract by substituting "a reasonable time" for "ninety * * * days".

Quimby also argues that the Michigan law prevents termination except for "reasonable cause". In the absence of an authoritative decision of the Supreme Court of Michigan to this effect, we cannot so construe the plain language of this contract. The case of *McClintock Co. v. Truxell Sales & Service Co.*, 297 *Mich.* 284, 297 *N. W.* 493, appears to support the contrary view. And the federal cases dealing with the Michigan law on the point hold the contrary. See the review of the authorities in *Biever Motor Car Co. v. Chrysler Corporation, D. C.*, 108 *F. Supp.* 948, *affirmed* 2 *Cir.*, 199 *F.* 2d 758.

We think it sufficiently clear that the contract provision for termination is enforceable under Michigan law, and that loss of profits must be confined to a period of 90 days.

We have had the benefit of a statement from opposing counsel on the point and see no reason for granting reargument on it.

2. Quimby's second point concerns his claim to recover $74,000 expended by Randall Motors in buying 440 shares of its outstanding stock. The court below rejected this claim, and in our first opinion we expressed approval of its ruling. Counsel says that this may be a dictum, although a similar point (the use of corporate surplus to buy stock) was presented in connection with Quimby's purchase of Mrs. Randall's holdings. In any event, we think that the trial court's ruling was correct.

Quimby bought 350 shares for $160 a share and 90 shares for $200 a share. The book value per share, as appears from the figures set forth in the petition for reargument, was about $288.50. It is obvious that the corporation not only suffered no loss but made a substantial book profit. Quimby argues that the net worth was reduced by the purchase. So it was; but there was an even greater reduction in stock liability. What we are here concerned with is the damage to Quimby upon liquidation of Randall Motors. The purchase of the 440 shares increased the value of his stock. Hence, if the 440 shares had not been bought, he would not have recovered as much from the corporate assets as he did.

This point is so clear to us that, again no reargument of it is required.

3. Quimby's third point relates to parts and accessories. We have held that Chrysler's obligation to buy parts and accessories was discharged because of Quimby's failure to give written notice, as required by the dealer's contract. Hence, we said that no claim for damage could be based upon loss suffered in the liquidation of parts and accessories. In so holding we assumed that the Chrysler obligation to repurchase parts and accessories were applicable to *all* such parts and accessories owned by Randall Motors. They were carried on the June 30 balance sheet at about $44,000. Some of them were sold to Leary Brothers for about $10,900, and we assumed that the remainder were covered by Chrysler's contract to repurchase.

Quimby now asserts that only certain of these parts and accessories were of the kind covered by the repurchase agreement. From the testimony to which we are now for the first time referred this appears to be true. If so, Quimby will have the right, on retrial, to adduce testimony to this effect and show, if he can, any loss attributable to the liquidation of the parts and accessories not covered by the repurchase clause. Any language to the contrary in our first opinion is modified accordingly.

Quimby also renews his argument, already considered and rejected, that the provisions of the repurchase clause were waived by Chrysler's conduct. He argues that Neely did not notify him that Randall Motors would not get the franchise until the latter part of June, 1951, more than 30 days after the expiration of the dealer agreement. The argument does not impress us. Under Quimby's theory, the contract to give him the franchise was breached on May 13. Quimby, thus faced with a breach of contract on or about May 13, should have taken steps to protect himself in respect of the resale of parts and acessories. He could readily have done so, but he chose to take a chance on renewal. He cannot claim a waiver of the repurchase provision.

Quimby also asserts that, as of June 30, 1951, on the faith of Neely's assurances, he renewed the lease on the Randall Motor premises for five years. This is probably an inadvertent error on counsel's part. Quimby first so testified, but on re-direct examination he corrected his testimony. The lease did not expire until June 30, 1952.

4. Quimby now urges that the error in the first trial in respect of parts and accessories was harmless, since three items of damage recoverable by him amount to $87,000. This sum, plus interest, exceeds the verdict rendered. Hence, he says, it should stand.

The three items are (1) loss of profits for 90 days: $19,000; (2) loss of value in his stock: $38,000; and (3) loss to Randall Motors in respect of parts and accessories: $30,000.

This argument is somewhat startling. We are asked to say that the amounts of all these items are recoverable as a matter of law. That, of course, we cannot do. They may or may not be recoverable to that extent. And the attempt to claim a total loss on the stock and also a corporate loss on the parts and accessories would seem to be another attempt to recover double damages. This occurred below, as we pointed out in our first opinion. But even if the $38,000 does not include any loss based on parts and accessories, it still remains that the amount of each recoverable item is not fixed by law and must be determined by a jury. There must be a retrial on the issue of damages.

In this connection we are told that the figure of $38,000, which has heretofore been assumed to represent the amount of Quimby's investment in Mrs. Randall's stock, should actually be $40,000. If so, Quimby will be at liberty on retrial to correct the mistake, if it be a mistake.

Finally, it is suggested that reargument might be granted so that counsel may give further consideration to the question of double damages, *i.e.*, the use of the loss on parts and accessories as a basis for corporate loss, recoverable by Quimby as assignee, and the use of the same item of damages as a basis for his personal loss on his stock investment. As stated in our first opinion, this obviously cannot be done. Quimby is entitled to show, if he can, the amount of loss on parts and accessories not covered by the repurchase clause as a basis for either of such losses. That is to say, he may claim, as he did at the first trial, that the value of his stock was depreciated by the loss; or, alternatively, he may now claim the corporate loss as assignee. He may not claim both.

The point is perfectly clear, and no further argument is needed.

We have carefully considered the brief filed in support of the petition for reargument, and are of the opinion that (subject to the modifications herein noted) our first opinion should stand, and that further argument is unnecessary.

The petition is denied.