J. R. WATKINS CO. *v.* RICH.

1. APPEAL AND ERROR—FAILURE TO FILE EXCEPTIONS TO FINDINGS.
  Where, in trial had without jury, no exceptions to court's findings were seasonably filed, judgment stands if sustained by findings.

2. CONTRACTS—OPTION FOR TERMINATION MUST BE EXERCISED IN GOOD FAITH.
  Provision in contract for termination at option of party is valid, but where relationship is commercial and does not involve fancy, taste, sensibility, judgment, or other personal features, option may be exercised only in good faith.

3. SAME—BREACH OF CONTRACT.
  Finding of trial court that plaintiff did not act in good faith in exercising option to terminate contract, *held*, warranted by testimony.

4. PRINCIPAL AND SURETY—BREACH OF CONTRACT DISCHARGED SURETIES.
  Where dealer in merchandise arbitrarily and illegally terminated and breached contract to sell goods to salesman on credit, sureties thereon were discharged from liability.

Error to Ionia; Hawley (Royal A.), J. Submitted January 23, 1931. (Docket No. 166, Calendar No. 35,151.) Decided April 7, 1931.

Assumpsit by the J. R. Watkins Company, a Delaware corporation, against Walter E. Rich, principal, and Irving H. Brown and others, sureties, on a contract for the sale of merchandise. Judgment for plaintiff against defendant Rich only. Plaintiff brings error. Affirmed.

*Eldred & Gemuend,* for plaintiff.

*Watt & Colwell,* for defendants.

Fead, J.   The action is against Rich as principal and the other defendants as his sureties.  Judgment ran against Rich, but in favor of the sureties, and plaintiff reviews.  Trial was had before the court without a jury.  No exceptions to the findings were seasonably filed, and the judgment stands if sustained by the findings.  *Gervickes* v. *Royal Exchange Assurance Co.,* 222 Mich. 103.

Plaintiff sells merchandise through salesmen who buy it on credit and solicit business and deliver goods in allotted territory.  Rich had contracts with plaintiff continuously since 1924, and had become indebted to it in the sum of $715.30.  The contract at bar was dated December 31, 1927, and gave Rich the right to purchase and sell until March 1, 1929.  The suretyship agreement obligated the sureties to pay the old debt and future charges at the time, place, and manner provided in the contract.  The contract provided that payment of the old debt should be from time to time during its term in amounts satisfactory to plaintiff, and that future charges should be paid on expiration or termination of the agreement.  The practice was to make periodical or occasional payments.

The contract was sent to Rich on December 31st for execution.  He returned it signed by some of the sureties.  It was sent back to him two or three times for more sureties, and was not finally executed and delivered to plaintiff until on or about May 8, 1928.  Goods were purchased at intervals during the next month and some payments made, but not sufficient to equal the charges.  The summer was the best business season.

On June 8, 1928, plaintiff, without prior demand for payments on the old or new debt or intimation of dissatisfaction in any respect, notified all the defendants that the contract was terminated and the whole debt due and payable. It claimed the right to prematurely end the contract under the provision:

"And it is further mutually agreed that either of the parties hereto may terminate this agreement at any time by giving the other party notice thereof in writing by mail, and any indebtedness then owing by either party to the other shall thereupon be and become immediately due and payable."

The court found that the purpose of the sureties in their undertaking was to aid Rich to obtain the business for a new full term in which to pay his debts; that they would not have executed it if they had known such opportunity would be arbitrarily refused him; that during the winter Rich had been in poor health, unable to attend to business, the roads were in bad condition so it was impracticable to travel until May; and that he undertook his campaign for business as soon as the contract had been accepted. The court further found:

"The plaintiff company has never assigned any reason for the termination of the contract, and, so far as the record discloses, none existed. The canceling of the contract by the plaintiff was obviously and as a matter of fact an arbitrary exercise of the will of the plaintiff and was not a reasonable and good-faith exercise of the power conferred by the contract to terminate the same by notice."

A provision in a contract for termination at the option of a party is valid. But where the relationship is commercial and does not involve fancy, taste, sensibility, judgment, or other personal features, the

option may be exercised only in good faith. *Cummer* v. *Butts,* 40 Mich. 322 (29 Am. Rep. 530); *Brucker* v. *Railroad Co.,* 166 Mich. 330; *Holton* v. *Monarch Motor Car Co.,* 202 Mich. 271; *Brown* v. *Board of Education,* 117 Kan. 256 (231 Pac. 72); *Bishop* v. *Bloomington Canning Co.,* 307 Ill. 179 (138 N. E. 597); 13 C. J. p. 607.

Counsel argued, and this is the only reason suggested by the testimony, that plaintiff canceled the contract because payments were not made on the old debt nor in full on the new charges. It had refused to tell Rich the cause on demand. Even at the trial plaintiff did not assign a reason. Plaintiff's conduct justifies a serious doubt that it ever intended to extend to Rich the benefit of the contract for its term. The testimony strongly indicated that plaintiff was concerned with securing the execution of a contract to pay the old debt by sufficient sureties, and, having obtained their guaranty, desired to make immediate collection. It amply warrants the finding of the court that plaintiff did not act in good faith.

Plaintiff, having arbitrarily and illegally terminated and breached the contract, the sureties were discharged from liability thereon. *Warner* v. *Fallon Coal Mines Co.,* 246 Mich. 493.

Judgment affirmed, with costs.

BUTZEL, C. J., and WIEST, CLARK, MCDONALD, POTTER, SHARPE, and NORTH, JJ., concurred.