**BUSAM MOTOR SALES, Inc. v. FORD MOTOR CO.**

Civ. No. 1824.

United States District Court
S. D. Ohio, W. D.

April 3, 1952.

See also D.C., 85 F.Supp. 790.

Gorman, Silversteen & Davis, Cincinnati, Ohio (Robert N. Gorman, Larz R. Hammel, Cincinnati, Ohio, of counsel), for plaintiff.

Taft, Stettinius & Hollister, Cincinnati, Ohio (J. Mack Swigert, Robert Taft, Jr., Cincinnati, Ohio, Duane D. Freese, Dearborn, Mich., of counsel), for defendant.

NEVIN, Chief Judge.

At the conclusion of the opening statement of counsel for plaintiff and in the absence of the jury, counsel for defendant (Mr. Swigert) made the following motion, as appears of record: "On behalf of the defendant company, I wish at this

time to move for the entry of judgment for the defendant on the basis of the pleadings and the opening statement." The right to make such a motion is not questioned. Best v. District of Columbia, 291 U.S. 411, 415, 54 S.Ct. 487, 78 L.Ed. 882; Lucas v. Hamilton Realty Corp., 70 App.D.C. 277, 105 F.2d 800.

Pursuant to the statement of the motion, it was argued at some length by counsel for the respective parties.

During the course of the argument, the following statements were made: "Mr. Swigert: (Of counsel for defendant) Now in the opening statement counsel for plaintiff admitted that the sales agreement in this case was in fact the sales agreement which is annexed to the answer which was filed by the defendant in this proceeding. So all of the terms of this sales agreement, a copy of which I have in my hand here, are admitted for the purposes of this motion to be the agreement of the parties. Judge Gorman: (Of counsel for plaintiff) I will say that it is conceded so there will be no argument but that is the contract."

This colloquy led the Court to inquire, as the record shows, whether the motion of defendant technically should perhaps be one for summary judgment based on the provisions of paragraphs (b) and (c) of Rule 12 and Rule 56 of the Federal Rules of Procedure, 28 U.S.C.A.

As the record further shows, defendant then added to its motion, as originally stated, a motion for summary judgment.

It is the present view of the Court that in the instant case the procedure to be followed is more or less immaterial. The Court is of the opinion that defendant's motion is well taken and should be sustained in either form. However, to save any question in the record and so that counsel and the higher court may fully understand the Court does here and now sustain defendant's motion "for the entry of judgment for the defendant on the basis of the pleadings and the opening statement" and counsel will prepare and submit an entry accordingly.

■ In arriving at its conclusion, the Court has considered all material facts properly plead and all material statements in the opening statement properly made in accordance with the issues raised by the pleadings, as true.

Because the record already shows the arguments of counsel and the authorities which they submit support their respective contentions, the Court deems it unnecessary to go into great detail either as to the facts stated or claimed by plaintiff in counsel's opening statement, or as set out in the pleadings or the law as applicable thereto. However, a brief review especially of the authorities relied upon by the respective parties may not be amiss.

In the course of his argument Judge Gorman stated as follows:

"I think there is the important legal question, or at least one of them, that can be decided at this time and disposed of. * * * There is one matter that the Court can consider in addition to the petition and opening statement. We purposely admitted that the contract attached to the answer was the contract in question in this case. So there can be no argument about what the particular contract is, and your Honor has that before you.

"Now what does the matter deal with? It deals with the question, first of all, with contracts terminable at will, and one of the questions involved is, must a contract terminable at will, such as this, be terminated in good faith? * * *.

"I think we should start with paragraph 11 of the contract because to my mind that is the fundamental matter before this Court. Paragraph 11 states 'that this agreement has been signed by the dealer and sent to the company's office, at Dearborn, Michigan, for final approval and execution, and has subsequently been there signed and delivered on behalf of the company, and the parties hereto intend it to be executed as a Michigan agreement and construed in accordance with the laws of the state of Michigan.' * * *

"The question which this Court has to decide is, What is the law of Michigan? Not what the weight of author-

ity is, not what the State of Ohio holds. It is not like the matter of Erie R. R. [Co.] v. Tompkins [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188] where you apply the Ohio law. But the Court has to put itself in the position that he is a Michigan judge in trying to interpret this law according to the laws of Michigan. So that the scope of inquiry in this case is very narrow. It does not call for a review of all the automobile cases in the United States. It calls for a definite review of what Michigan courts have said was the Michigan law.

"Now we have said and we say all along that in the case of [J. R.] Watkins [Co.] v. Rich, 254 Mich. 82 [235 N.W. 845], that contracts in Michigan terminable at will can only be terminated in good faith."

While calling attention to other Michigan cases cited in the Rich case, which incidentally was decided in 1931, plaintiff in the final analysis relies on the decision in that case. In the Rich case, it is held, as stated on page 82 of 254 Mich., on page 845 of 235 N.W., that "Provision in contract for termination at option of party is valid, but where relationship is commercial and does not involve fancy, taste, sensibility, judgment, or other personal features, option may be exercised only in good faith. * * * Where dealer in merchandise arbitrarily and illegally terminated and breeched contract to sell goods to salesman on credit, sureties thereon were discharged from liability."

█ It is too fundamental to need the citation of authority that every decision must be considered in the light of the facts upon which it is based. As a reading of the Rich case will show, the facts there presented are so dissimilar from the facts presented by the pleadings and opening statement in the instant case as to make it not a controlling or binding authority here or in any given case based on the contract here involved.

This is the view not only of this Court, but it is the view as well of other courts including the Court of Appeals of the Second Circuit. In the case of Bushwick-

Decatur Motors v. Ford Motor Company, 116 F.2d 675, the court ruled on the very language of the contract here under consideration. There the court say, 116 F.2d on page 676: "It is not disputed that four and a half years after the inception of this dealership, notice of termination was duly given by the Company. Plaintiff contends, however, that such termination was malicious, in bad faith, and contrary to the custom of the trade, and therefore wrongful; in its complaint and affidavits it makes a showing of substantial loss. Defendant stands firmly on its unqualified power to terminate, irrespective of its reasons for doing so, though its affidavits do challenge the charges of malice and bad faith. Exactly the same termination clause in the same form of contract has been construed to give Ford an unqualified power to terminate the relationship in Buggs v. Ford Motor Co., supra [7 Cir., 113 F.2d 618.]"

The court then cites a number of authorities and then comes on to say,

"Other cases are cited and discussed in the Buggs case and in the opinion below. * * *

"With this weight of precedent, in the light of the clear intent of the parties, we feel constrained to hold that defendant had ended its obligations under the contract. But plaintiff contends that the law of Michigan is otherwise and cites therefor J. R. Watkins Co. v. Rich, 254 Mich. 82, 235 N.W. 845, 846, holding that a power of termination, extended to 'either of the parties' 'at any time by giving the other party notice thereof,' of a contract with a definite and stated duration did not authorize termination in the absence of 'good faith.' We do not find that this contention has been considered in the cited cases, though at least in the Buggs case the contract contained the provision before us here that the law of Michigan should govern its construction."

The court then goes on to state the facts in the Rich case and say, "Here the agreement was without stated duration except for the provision making it terminable at

any time 'at the will of either party.' The difference in language alone might not be a sufficient basis for distinguishing the case; but that difference, coupled with the rather clear indication of fraud and its inconsistency otherwise with Michigan precedents, leads us to view it as not a binding authority upon us here."

In response to this, plaintiff in its brief in the Court of Appeals where the present case was taken in connection with a previous trial, on page 14 say, "First of all, Judge Clark in ruling on a motion for summary judgment in the Bushwick case incorrectly interpreted Michigan law." However, with Judge Clark, and concurring in his conclusion, were two other Circuit Court judges, Judge Chase and Judge Learned Hand. And prior to that decision, the same conclusion had been reached by the District Court, as shown by its decision reported in 30 F.Supp. at page 917. In that case, incidentally, the judgment was granted on a motion for summary judgment.

In a later Michigan case, F. H. McClintock Co. v. Truxell Sales & Service, Inc., 297 Mich. 284, 297 N.W. 493, decided in 1941, ten years after the Rich case, the Michigan Supreme Court said of a contract somewhat similar to the one here under consideration that "Under agreement relative to automobiles between defendant distributor, designated as a 'direct dealer,' and plaintiff, designated as an 'associate dealer,' in which defendant was authorized to terminate the agreement upon 90 days' written notice, and in which there was contained a provision that defendant direct dealer should have the right to accept, in whole or in part, any or all orders received, and not be liable for loss or damage resulting from failure to ship or deliver goods ordered, plaintiff may not recover loss of profits arising from failure to deliver cars it ordered during 90-day period following cancellation by defendant where such orders were never accepted.

"In construing a contract a court must consider it in its entirety and cannot remake it for the parties, nor, by deletion, give it a tenor contrary to its explicit terms."

This present case of Busam Motor Sales, Inc. v. Ford Motor Company, No. 1824 in this court, was tried once before in this court, before Judge Druffel and a jury. As a result of that trial, a verdict for plaintiff was rendered by the jury.

On August 31, 1949, Judge Druffel, in a written opinion, granted a new trial and on September 9, 1949 an order was entered in accordance with his decision.

Judge Druffel's opinion just referred to is reported in 85 F.Supp. page 790. At the conclusion of his opinion Judge Druffel stated, 85 F.Supp. on page 797, "It is the opinion of the court that the element of good faith under the Michigan law remains a question of fact for the jury, so the motion for judgment notwithstanding the verdict must be overruled."

An appeal was taken to the Court of Appeals from Judge Druffel's order overruling the motion *non obstante*. That appeal was later dismissed on procedural grounds. The Court of Appeals did not go into, consider or discuss the merits of the case.

Since the decision by Judge Druffel, decisions have been rendered by other courts which counsel for defendant claim are pertinent here and these defendant has called to the Court's attention. Among others is the case of Myers Motors, Inc., v. Kaiser-Frazer Sales Corp., 178 F.2d 291, decided by the Court of Appeals of the Eighth Circuit, on November 29, 1949. The Court of Appeals in that case affirmed the judgment of the District Court. The decision of the District Court is reported in 83 F.Supp. 716. The decision of the District Court was rendered on April 14, 1949, just shortly before Judge Druffel handed down his written decision in the present case, on August 31, 1949. The District Court in the Myers case sustained defendant's motion for summary judgment. A judgment for defendant was entered accordingly and it was that judgment which the Court of Appeals of the Eighth Circuit later affirmed.

Plaintiff's counsel in the present case insist that the Myers case is no authority to be here considered, because plaintiff claims that the contract involved in the Myers case was different in its wording

from the contract now before the Court. However, it is the view of the Court that the decision in the Myers case at least tends to support defendant's contentions here.

A very recent case is that of Green Bay Auto Distributors, Inc., v. Willys-Overland Motors, Inc., D.C., 102 F.Supp. 151, 154. It was decided by Judge Kloeb of the Northern District of Ohio, on December 28, 1951. Again, plaintiff's counsel insist that this case should not be considered as an authority here, because the contract there being considered by Judge Kloeb provided that it should be governed and construed "according to the laws of the State of Ohio". However, in the course of his decision, Judge Kloeb did refer to the case of J. R. Watkins Co. v. Rich, upon which plaintiff here relies, as already stated. He also cited and quoted, 102 F.Supp. at page 161, from the decision by Judge Picard reported in Martin v. Ford Motor Co., D.C., 93 F.Supp. 920, to which reference will be hereinafter made. While Judge Kloeb's decision may not be controlling here, nevertheless, it is the view of the Court that it does at least tend to support defendant's theory. Judge Kloeb, incidentally, rendered his decision on a "Motion for Summary Judgment" filed on behalf of defendant in that case.

Finally, we come to Judge Picard's decision in the case of Martin v. Ford Motor Company, D.C., 93 F.Supp. 920, 921, to which brief reference has just been made. That decision was rendered on October 31, 1950—more than a year after Judge Druffel's decision reported in 85 F.Supp. 790. This decision is by a Federal Court sitting in Michigan, in a suit brought in the state of Michigan. The court there had before it the identical contract before the court in this case. At the close of the opening statement in that case, a motion on behalf of the defendant in the same form as the motion here under consideration was sustained by Judge Picard.

In that case, Judge Picard reviews all the Michigan cases here cited, including J. R. Watkins Co. v. Rich, and found and concluded as follows: "Accordingly the court finds and concludes that, under the law of Michigan, the provisions of the agreement dated October 20, 1944 with respect to termination were valid, effective and enforceable and by reason thereof defendant had the right to and did lawfully terminate said agreement and the dealership thereunder, and that such right to terminate was not subject to question on the ground of unreasonableness, unfairness, lack of good faith, bad faith or because of motive, intent or resultant detriment to plaintiff."

In his argument, plaintiff's counsel submits that this Court either must follow the conclusion reached by Judge Druffel in his written opinion on the motion for a new trial, reported in 85 F.Supp. 790, or the findings and conclusions reached by Judge Picard in the Martin case.

In reaching its present conclusion, this Court has before it certain decisions which Judge Druffel could not have had at the time he rendered his decision, because they were not rendered until a date subsequent to the date of Judge Druffel's opinion, which was, as stated, filed on August 31, 1949. What conclusion Judge Druffel might have reached in the light of these later decisions neither this Court nor anyone else knows. This Court, therefore, adopts as its own and here incorporates as a part of this decision the findings and conclusions of Judge Picard, as shown in the first paragraph, at the top of page 921, as reported in 93 F.Supp., and which have been heretofore quoted. However, that there may be no misunderstanding either in the record or by counsel, I now repeat as the findings and conclusions of this Court, as follows: Accordingly in the instant case the court finds and concludes that under the law of Michigan, the provisions of the agreement dated March 4, 1946, with respect to termination were valid, effective and enforceable and by reason thereof defendant had the right to and did lawfully terminate said agreement and the dealership thereunder, and that such right to terminate was not subject to question on the grounds of unreasonableness, unfairness, lack of good faith, bad faith or because of motive, intent or resultant detriment to plaintiff. This applies also to the second so-called claim in the petition to which I will now refer.

The petition herein contains what has been denominated by counsel as two claims. The second claim, so-called, reads as follows: "Plaintiff further says that pursuant to paragraph 5 of the agreement of March 4, 1946 the defendant company ordered and directed the plaintiff company to build and construct a new building for housing plaintiff's business, and in accordance therewith the plaintiff company expended and incurred expenses in the sum of Four Thousand Eight Hundred ($4800.-00) Dollars in obtaining the preparation of plans, estimates, surveys and specifications of such new building, and that said plans, estimates, surveys and specifications which are now of no value to plaintiff, would not have been obtained except for the directions and orders of defendant company relative thereto."

In paragraph 12 of the contract here under consideration, it is provided that "The requirements and limitations of this agreement as to the facilities to be supplied by dealer * * * are intended only to protect the good name and good will and business of company. * * * It is distinctly understood that this agreement contemplates that dealer will acquire dealer's own plant and facilities in accordance with dealer's own discretion. * * * Nothing herein contained shall impose any liability on company for any expenditures made or incurred by dealer in preparation for performance or in performance of this agreement." Under the terms of the contract, plaintiff is not entitled to recover on its so-called second claim. In this connection, the statement by the Court of Appeals in the Bushwick case, 116 F.2d at page 679, seems appropriate. The court said: "The promise alleged in the third cause, to 'allocate to the plaintiff a more profitable territory' as soon as such 'would become available,' even if it could stand against the same objections of lack of showing of its legal execution, is nevertheless as much subject to the written power of termination as are the original provisions of that contract. It must therefore be considered to be abrogated for the same reasons." Citing several authorities.

Some quotations were read to the Court by counsel upon both sides from a Harvard Law Review, to which they referred. However, as stated by Judge Picard, 93 F.Supp. on page 921 of his reported decision, "It is beyond the power of the judiciary to engraft conditions upon the exercise of such a contractual right." And in this connection the Court again refers to the Bushwick case wherein the Court of Appeals states, 116 F.2d on page 677: "With a power of termination at will here so unmistakably expressed, we certainly cannot assert that a limitation of good faith was anything the parties had in mind. Such a limitation can be read into the agreement only as an overriding requirement of public policy. This seems an extreme step for judges to take. The onerous nature of the contract for the successful dealer and the hardship which cancellation may bring him have caused some writers to advocate it, however; and an occasional case has seized upon elements of overreaching to come to such a result on particular facts."

The court then cites several authorities, including a criticism appearing in 45 Harvard Law Review 378. Thereafter the court proceeds in its decision, as follows: "But, generally speaking, the situation arises from the strong bargaining position which economic factors give the great automobile manufacturing companies: the dealers are not misled or imposed upon, but accept as nonetheless advantageous an agreement in form bilateral, in fact one-sided. To attempt to redress this balance by judicial action without legislative authority appears to us a doubtful policy. We have not proper facilities to weigh economic factors, nor have we before us a showing of the supposed needs which may lead the manufacturers to require these seemingly harsh bargains."

Motion granted.