## MURPHY v SEED-ROBERTS AGENCY, INC.

1. INSURANCE—TERMS OF INSURANCE POLICY—CONTRACTS—AMBIGUOUS TERMS.

Policies of insurance are matters of agreement by the parties and the job of the courts is to determine what that agreement was and enforce it accordingly; if the terms of a policy are plain and unambiguous their plain meaning should be given effect, however, an ambiguous policy is open to construction and questions of interpretation may present jury questions.

2. INSURANCE—INSURANCE POLICIES—INTERPRETATION OF POLICIES.

Insurance policies must be interpreted by reading them as a whole, and courts should attempt to harmonize all parts of a policy so as to give effect to each clause contained therein.

3. INSURANCE—CANCELLATION OF INSURANCE—STATUTES—PROCEDURE FOR CANCELLATION—GROUNDS FOR CANCELLATION—JUDGMENT—SUMMARY JUDGMENT.

A statute which requires that any policy of liability insurance must contain a provision allowing for cancellation of the policy by either the insured or the insurer and which provides minimum procedural steps for cancellation is silent as to permissible grounds for cancellation; a cancellation clause in an insurance policy which similarly prescribes only the procedure for cancellation is ambiguous as to the requisite grounds for cancellation and requires interpretation, and granting a summary judgment based on the clause is inappropriate (MCLA 500.3020; MSA 24.13020).

4. INSURANCE—STATUTES—CONSTRUCTION.

Insurance laws should be liberally construed in favor of policy holders, creditors and the public.

REFERENCES FOR POINTS IN HEADNOTES

[1] 43 Am Jur 2d, Insurance § 259 et seq.
[2] 43 Am Jur 2d, Insurance § 263.
[3] 43 Am Jur 2d, Insurance § 397 et seq.
[4] 43 Am Jur 2d, Insurance § 271 et seq.
[5] 43 Am Jur 2d, Insurance § 404 et seq.
[6, 8] 61 Am Jur 2d, Pleading § 229 et seq.
[7] 43 Am Jur 2d, Insurance §§ 408, 409.

5. CONTRACTS—INSURANCE—CANCELLATION OF INSURANCE—STATUTES —NOTICE REQUIREMENTS.

Mandatory statutory provisions are read into a contract if not inserted by the parties, therefore, the minimum procedural notice requirements for cancellation will be read into insurance contracts; however, the right of the insurance company to cancel will not be read into a contract because it is not a mandatory statutory provision.

6. APPEAL AND ERROR—JUDGMENT—SUMMARY JUDGMENT—FAILURE TO STATE CLAIM.

The test on appellate review of a summary judgment for failure to state a claim is whether the plaintiff's claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery.

7. INSURANCE—CANCELLATION OF INSURANCE—PUBLIC POLICY.

Public policy considerations may, in some circumstances, void an attempted cancellation by an insurer of an insurance policy, even where there is an unrestricted contractual right to cancel.

8. APPEAL AND ERROR—JUDGMENT—SUMMARY JUDGMENT—FACTUAL DISPUTE.

Summary judgment was inappropriate in a case where, upon review of the pleadings, affidavits, depositions and exhibits, the conclusion is that there are material facts in dispute.

Appeal from Oakland, William John Beer, J. Submitted May 5, 1977, at Detroit. (Docket No. 27987.) Decided October 10, 1977.

Complaint by John W. Murphy and more than 75 other licensed physicians against Seed-Roberts Agency, Inc., Commercial Insurance Services of America, and California Union Insurance Company for declaratory relief from an attempted cancellation of medical malpractice insurance certificates, or, in the alternative, reformation of the insurance contract, or for monetary damages. Summary judgment was granted in favor of defendant California Union Insurance Company, and plaintiffs' motion for partial summary judgment

was denied. Plaintiffs appeal. Affirmed in part, reversed in part, and remanded.

*Dahlberg, Mallender & Gawne* (by *Robert W. Appleford* and *J. C. Wagner),* for plaintiffs.

*Buchanan, Ogne & Jinks, P. C.,* for defendant California Union Insurance Company.

Amicus Curiae: *Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Frederick H. Hoffecker,* Assistant Attorney General.

Before: T. M. BURNS, P. J., and BRONSON and C. W. SIMON,* JJ.

BRONSON, J. Plaintiffs, some 78 licensed physicians engaged in the practice of medicine in Oakland County, appeal from a March 19, 1976, judgment denying their motion for partial summary judgment and dismissing their complaint against defendant California Union Insurance Company for failure to state a claim upon which relief can be granted. GCR 1963, 117.2(1). For the reasons developed in this opinion we reverse the grant of summary judgment in favor of defendant California Union Insurance Company, affirm the denial of plaintiffs' motion for summary judgment, and remand the case for trial.

The complaint alleges that each plaintiff holds an individual certificate of malpractice liability insurance issued by defendant California Union under and pursuant to a single master policy issued by California Union to the William Beaumont doctors' association. The master policy states

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the policy period to be from June 26, 1974, to June 26, 1977.

The individual insurance certificates also include the following cancellation clause, which is required by MCLA 500.3020; MSA 24.13020:

"This certificate may be cancelled by the Named Insured by surrender thereof to the Company or any of its authorized representatives or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This certificate may be cancelled by the Company by mailing to the Named Insured at the address shown in this certificate, written notice stating when not less than 90 days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the certificate period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing."

Sometime in 1973, representatives of William Beaumont Hospital began negotiating for a group malpractice insurance program under which the hospital and its staff could obtain malpractice insurance coverage in a single program from one insurance company. Negotiations were undertaken with California Union through its agents, Commercial Insurance Services and the Seed-Roberts Agency. It is claimed that California Union, and/or its agents, offered plaintiffs a program which would provide such insurance with a three-year term, a single premium to be paid in advance with no annual or periodic premium increase, and termination of any individual doctor's insurance only upon cause attributable to the individual.

It is alleged that shortly after individual certificates of insurance were delivered to plaintiffs in

late 1974, the defendants first attempted to amend those certificates so as to provide only one year of coverage at an increased premium, then sent cancellation notices to each plaintiff pursuant to the 90-day cancellation clause. The cancellation notices included an offer to reinstate the insurance for one year only upon payment of a new, much higher premium.

The complaint contains four separate counts. Count 1 asserts that the attempted cancellations would breach the agreements between plaintiffs and defendants and seeks declaratory relief.

Count 2, pled alternatively, asks for reformation of the contract on the basis of fraud in the event the contract as written is interpreted as permitting the attempted cancellations absent cause attributable to the individual doctors.

Count 3 of the complaint seeks monetary damages on the basis of fraud as an alternative to the relief requested in Counts 1 and 2, and Count 4 seeks monetary damages on a negligence theory.

On October 6, 1975, defendant California Union filed a motion for summary judgment pursuant to GCR 1963, 117.2(1), on the ground that plaintiffs' complaint failed to state a claim upon which relief could be granted. The motion referred to the inclusion of the 90-day cancellation clause in the contracts of insurance and to an integration clause. The motion also stated that the issuance of such a contract of insurance without a cancellation clause would have been in violation of Michigan law. MCLA 500.3020; MSA 24.13020.

On January 28, 1976, plaintiffs filed a motion for summary judgment against defendant California Union pursuant to GCR 1963, 117.2(3). Plaintiffs asserted that there was no genuine issue as to any material fact inasmuch as one of defendant's offi-

cers, upon being deposed, had admitted that California Union had decided to amend or cancel plaintiffs' policies in order to obtain higher premiums for the sole reason that plaintiffs' premiums were lower than premiums being charged by other companies. Plaintiffs claimed that cancellation of plaintiffs' coverage for such a reason was contrary to public policy and prohibited. Plaintiffs therefore requested summary judgment on their request in Count 1 for declaratory relief. Plaintiffs argued that inasmuch as defendant California Union had admitted cancellation of the certificates of insurance without cause attributable to plaintiffs and for the reason of raising premiums and shortening the terms of coverage, there was no dispute as to any facts material to a decision on whether such use of the cancellation clause was contrary to public policy and a breach of contract.

After hearing arguments on the motions, the trial court denied plaintiffs' motion for summary judgment and granted defendant California Union's motion. An order was entered on March 19, 1976, dismissing plaintiffs' complaint as to defendant California Union with prejudice. Plaintiffs now appeal.

I.

As noted, Count 1 of plaintiffs' complaint requested a declaratory judgment that the contracts of insurance could be cancelled by the company only for cause and for injunctive relief restraining defendant California Union from carrying out threatened cancellations.

Plaintiffs' motion for summary judgment on Count 1 pursuant to GCR 1963, 117.2(3), also requests, in the first instance, a purely legal determination that cancellation of malpractice insurance

absent cause attributable to the insured violates public policy. Under plaintiffs' theory, plaintiffs would be entitled to summary injunctive and declaratory relief because of the alleged deposed admissions by defendant California Union as to the reasons for the threatened cancellations.

The theory behind defendant's summary judgment motion is that the contract's cancellation clause plainly and unambiguously gives defendant the right to cancel the malpractice insurance at any time for any or no reason, that MCLA 500.3020; MSA 24.13020 requires such a construction of the clause and precludes any conclusion that such a clause could be against public policy, and that the merger clause prohibits reference to any prior negotiations or agreements of the parties leading up to their entering into this contract.

Essentially then, the opposing motions for summary judgment on Count 1 asked for a summary declaratory determination whether the contract could be cancelled at any time for any reason or whether the contract could be cancelled only for cause.

To begin with defendant's motion for summary judgment, we are not of the opinion that the previously quoted cancellation clause unequivocally and unambiguously grants defendant the right to cancel plaintiffs' insurance at any time for no reason so as to justify summary judgment for defendant on Count 1.

Policies of insurance are much the same as other contracts; they are matters of agreement by the parties and the job of the courts is to determine what that agreement was and enforce it accordingly. *Eghotz v Creech,* 365 Mich 527, 530; 113 NW2d 815 (1962). If the terms of that contract are plain and unambiguous, their plain meaning

should be given effect. *Wozniak v John Hancock Mutual Life Insurance Co,* 288 Mich 612; 286 NW 99 (1939). An ambiguous policy, however, is open to construction and questions of interpretation may well present jury questions. *Clark v Hacker,* 345 Mich 751; 76 NW2d 806 (1956).

Insurance policies must be interpreted by reading them as a whole. *Sloan v Phoenix of Hartford Insurance Co,* 46 Mich App 46; 207 NW2d 434 (1973). Courts should attempt to harmonize all parts of a contract of insurance so as to give effect to each clause contained therein. *Jackson v British America Assurance Co,* 106 Mich 47; 63 NW 899 (1895). Such a reading of the contract as a whole may be necessary to determine whether ambiguity exists in particular clauses. *Insurance Co of North America v L C Young Painting & Decorating Co,* 11 Mich App 304; 161 NW2d 24 (1968). *Cf. DeLand v Fidelity Health & Accident Mutual Insurance Co,* 325 Mich 9; 37 NW2d 693 (1949).

Defendant asserts that the statutory cancellation clause in the policy of insurance requires summary judgment in its favor. It is claimed that the meaning of the language is clear. We do not agree that the language requires the result defendant seeks. The statute is silent as to permissible grounds for cancellation. It need not be read as requiring that an insurance company have the absolute right to cancel at its whim and caprice. Rather, several factors indicate that the intended purpose of the statutory provision is to provide minimum procedural steps for cancellation and no more.

First, this clause does not expressly state that cause attributable to the insured is required for the defendant insurance company to cancel the

policy. On the other hand, neither does that clause expressly state that the company may cancel without cause. A literal reading of the contract term provides only an understanding of the procedure by which defendant may cancel the policy, but not permissible grounds for cancellation. The provision would be consistent with a separate clause allowing cancellation only for cause attributable to the insured. It would also be consistent with a separate clause allowing cancellation for any or no reason. The cancellation clause itself therefore is ambiguous as to the requisite *grounds* for cancellation; it prescribes only the necessary procedure.

The Michigan Insurance Code was enacted for the benefit of the public and the insurance laws should be liberally construed in favor of policy holders, creditors and the public. *Dearborn National Insurance Co v Commissioner of Insurance,* 329 Mich 107, 118; 44 NW2d 892 (1950); *Commissioner of Insurance v American Life Insurance Co,* 290 Mich 33, 43–44; 287 NW 368 (1939). The quoted provision has at least two goals beneficial to an insured. The first is to require that an insured be unequivocally notified that his policy is subject to cancellation. *DeLand, supra,* at 20. The second is to provide a minimum procedure of providing notice to an insured of impending cancellation of his policy. *State Automobile Mutual Insurance Co v Babcock,* 54 Mich App 194, 206–210; 220 NW2d 717 (1974). Thus, reading the statute as procedural only does not strip it of meaning.

The statute does not require that insurance companies always retain an unequivocal right to cancel for any or no reason. For example, despite the general rule that mandatory statutory provisions are read into a contract if not inserted by the

parties,[1] the minimum procedural notice requirements for cancellation will be read into insurance contracts, *Babcock, supra,* while the right of the insurance company to cancel will not. *DeLand, supra.* In *DeLand,* an insurance contract which did not contain the statutory cancellation provision was read as permitting cancellation by the insurance company only for nonpayment of premiums and for reasons explicitly spelled out in the contract. That case is consistent with the general rule that the parties to a contract of insurance can insert additional terms on a subject covered by mandatory statutory provision as long as the additional terms are beneficial to the insured and do not materially avoid the statutory scheme of the contract. *Mutual Benefit Life-Insurance Co v Commissioner of Insurance,* 151 Mich 610, 615; 115 NW 707 (1908). The implication is that the grounds for cancellation of a policy of casualty insurance are a matter for agreement by the parties to the contract, and those grounds are *not* supplied by the statutory cancellation clause. *I.e.,* the statutory cancellation clause is procedural only; it does not specify for what reason, if any, an insurance policy may be cancelled.

In addition, the policy states that it is for a three-year term. If the cancellation clause were read as permitting cancellation at any time without cause, it would be rendered ambiguous by the express term of the policy.

On appellate review of summary judgment for failure to state a claim, the test is whether plaintiff's claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery. *Stewart v Troutt,* 73 Mich App 378; 251 NW2d 594

---

[1] *Babcock, supra,* 54 Mich App at 206 and cases cited therein.

(1977). We cannot say, applying this test to the instant case, that the cancellation clause relied on by defendant renders plaintiffs' claim unenforceable as a matter of law under every possible factual development. The summary judgment for defendant on Count 1 of plaintiffs' complaint must therefore be reversed.

At the same time, however, we must affirm the denial of plaintiffs' motion for summary judgment on this count. There are genuine issues of material fact concerning the meaning of the insurance contract, such as whether the cancellation clause allows cancellation without cause.[2]

Plaintiffs would have us hold that public policy will never permit cancellation of a policy of casualty insurance, or at least, malpractice insurance, absent cause attributable to the insured. We are not prepared to go so far. We can envision situations where parties of equal bargaining power have bargained for and agreed upon a contract clause providing for an unlimited right of cancellation on either side.

This is not to say that considerations of public policy have no part to play in this litigation. Some discussion of public policy considerations may well be of aid to the trial court in construing the contract on remand or in evaluating the use made of the cancellation clause.

In *Skutt v Grand Rapids,* 275 Mich 258, 263–265; 266 NW 344 (1936), our Supreme Court engaged in the following extended discussion of public policy in affirming the trial court's refusal to

---

[2] As noted above, the cancellation clause could be read consistently with provisions allowing cancellation only with or without cause. Therefore, parol evidence is admissible to determine whether the parties agreed to allow cancellation by the insurer only with cause. *See Union Oil Co of California v Newton,* 397 Mich 486; 245 NW2d 11 (1976).

enforce a contract on the grounds that it was contrary to public policy:

"The rule of public policy as enunciated by Mr. W. W. Story was adopted by this court in *McNamara v. Gargett,* 68 Mich. 454 (13 Am. St. Rep. 355) [36 NW 218 (1888)]. He said:

"'Public policy is in its nature so uncertain and fluctuating, varying with the habits and fashions of the day, with the growth of commerce and the usages of trade, that it is difficult to determine its limits with any degree of exactness. It has never been defined by the courts, but has been left loose and free of definition in the same manner as fraud. This rule may, however, be safely laid down, that wherever any contract conflicts with the morals of the time, and contravenes any established interest of society, it is void, as being against public policy.' W. W. Story, Contracts (5th Ed.), § 675.

"'The principle that contracts in contravention of public policy are not enforceable should be applied with caution and only in cases plainly within the reasons on which that doctrine rests.' *Twin City Pipe Line Co. v. Harding Glass Co.,* 283 U.S. 353 (51 Sup. Ct. 476, 83 A.L.R. 1168); 6 R.C.L. p 710 [75 L Ed 1112 (1931)].

"We adopt as did the trial judge the following from *Pittsburg, C.C. & St. L.R.. Co. v. Kinney,* 95 Ohio St. 64 (115 N.E. 505, L.R.A. 1917 D, 641, 643, Ann. Cas. 1918 B, 286):

"'What is the meaning of "public policy?" A correct definition, at once concise and comprehensive, of the words "public policy," has not yet been formulated by our courts. Indeed, the term is as difficult to define with accuracy as the word "fraud" or the term "public welfare." In substance, it may be said to be the community common sense and common conscience, extended and applied throughout the State to matters of public morals, public health, public safety, public welfare, and the like. It is that general and well-settled public opinion relating to man's plain, palpable duty to his fellow men, having due regard to all the circumstances of each particular relation and situation.

" 'Sometimes such public policy is declared by Constitution; sometimes by statute; sometimes by judicial decision. More often, however, it abides only in the customs and conventions of the people,—in their clear consciousness and conviction of what is naturally and inherently just and right between man and man. It regards the primary principles of equity and justice and is sometimes expressed under the title of social and industrial justice, as it is conceived by our body politic. When a course of conduct is cruel or shocking to the average man's conception of justice, such course of conduct must be held to be obviously contrary to public policy, though such policy has never been so written in the bond, whether it be Constitution, statute or decree of court. It has frequently been said that such public policy is a composite of constitutional provisions, statutes and judicial decisions, and some courts have gone so far as to hold that it is limited to these. The obvious fallacy of such a conclusion is quite apparent from the most superficial examination. When a contract is contrary to some provision of the Constitution, we say it is prohibited by the Constitution, not by public policy. When a contract is contrary to statute, we say it is prohibited by a statute, not by a public policy. When a contract is contrary to a settled line of judicial decisions, we say it is prohibited by the law of the land, but we do not say it is contrary to public policy. Public policy is the cornerstone—the foundation—of all Constitutions, statutes, and judicial decisions, and its latitude and longitude, its height and its depth, greater than any or all of them. If this be not true, whence came the first judicial decision on matter of public policy? There was no precedent for it, else it would not have been the first.' "

Considerations of public policy have at times persuaded courts to refuse to permit attempts to cancel insurance even pursuant to unrestricted reserved rights to cancel. Thus it has been held that fire insurance may not be cancelled where the danger of a fire has become imminent. *Home Life*

*Insurance Co of New York v Heck,* 65 Ill 111, 114 (1872).

In *L'Orange v Medical Protective Co,* 394 F2d 57 (CA 6, 1968), it was held that even under an unconditional right to cancel, the defendant insurer would not be permitted to cancel the medical malpractice insurance of the plaintiff dentist in order to threaten him not to testify as a witness in pending and future malpractice lawsuits against the defendant insurer. The Court held that such a use of the cancellation clause would permit insurance companies to use the clause to commit an act prohibited by the public policy of the State of Ohio and was therefore void and a breach of contract.

These cases indicate that public policy considerations may void an attempted cancellation of an insurance policy, even under an unrestricted contractual right to cancellation. Perhaps even more important to this case is the more general rule laid down by the Supreme Court some years ago in *J R Watkins Co v Rich,* 254 Mich 82, 84–85; 235 NW 845 (1931), where the Court said:

"A provision in a contract for termination at the option of a party is valid. But where the relationship is commercial and does not involve fancy, taste, sensibility, judgment, or other personal features, the option may be exercised only in good faith."

The Court went on to affirm the trial court's holding in that case that the plaintiff company had not acted in good faith in cancelling a contract to provide goods on credit to the defendant salesman where no reason for the cancellation had been given and where the evidence raised serious doubt as to whether plaintiff had intended to extend the benefit of the contract to the defendant salesman for the stated term of the contract. The

plaintiff's arbitrary termination of the contract was held to be a breach of the contract. *J R Watkins Co v Rich, supra,* at 85.

The particular public policy argument which has been made by plaintiff in this appeal is that to permit the threatened cancellations in this case would be to sanction a type of "bait and switch" selling tactic by defendant California Union which would be prohibited by § 2007 of the Insurance Code, MCLA 500.2007; MSA 24.12007.[3] The argument is similar to that accepted in *Watkins, supra.*[4]

The Michigan Attorney General, who has filed a brief as amicus curiae, makes the following specific public policy argument:

"The insurance code, *supra,* speaks to companies like California Union in sections 1840 through 1864 and sets forth under what circumstances and in what manner they may operate in Michigan. Succinctly stated, the code allows a surplus lines carrier to write policies in this state when similar coverage is not available from insurers represented in the State. * * * The facts show that California Union is a surplus lines insurer * * * .

[3] "The following are defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:

. "Making, publishing, disseminating, circulating, or placing before the public, or causing, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in a newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster, or over any radio station, or in any other way, an advertisement, announcement or statement containing any assertion, representation or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business, which is untrue, deceptive or misleading."

[4] Plaintiffs also rely on *Argonaut Insurance Co v Florida Medical Association, Inc,* USDC, Middle District Florida, No. 75-140 Civ-J-T, an unpublished case in which an attempted cancellation by the defendant insurance company of medical malpractice insurance was held to be void. It is unclear, however, whether the result in that case was based on the particular contract before the court, whether public policy influenced the decision, or whether other factors entered into the decision. Consequently that case is of little value as precedent.

Presumably, since at least two other insurers were writing malpractice policies in this State (Medical Protective and Shelby Mutual), the three-year term of the policy must have been the operative factor in these policies being written."

We have reviewed the pleadings, affidavits, depositions and exhibits in the case and conclude that there are material facts in dispute, as to both of these theories, as well as on the issue of whether the cancellation clause, even if construed as being unrestricted by the contract, was exercised in good faith. Summary judgment for the plaintiffs is consequently inappropriate at this time and we affirm the trial court's denial of summary judgment for plaintiffs on Count 1 of the complaint.

## II.

Defendant California Union was also awarded summary judgment on the basis that Counts 2–4 of plaintiffs' complaint failed to state a claim upon which relief could be granted. The substance of those counts has previously been related in this opinion. Since the elements of fraud and negligence were sufficiently pled in the complaint, and the contract's merger clause obviously provides no defense to the fraud and negligence charges, it appears that summary judgment was entered on a theory that an unrestricted and unreviewable right to cancel was required by law to be in the contracts of insurance and that consequently the exercise of such a clause could not form the basis of an action for damages or reformation. We rejected this theory in part I of this opinion and it follows that summary judgment was improperly granted on these counts. The summary judgment for defendant as to Counts 2–4 of plaintiffs' com-

plaint is reversed and this case is remanded for trial on the merits.

Affirmed in part, reversed in part. Remanded for further proceedings consistent with this opinion. No costs.