Cavanagh, J.
(dissenting). I write separately to express my disagreement with the majority’s conclusion that retail new car customers exchange consideration for goodwill policy parts when purchasing vehicles manufactured by plaintiff. Plaintiff has claimed its goodwill repair parts should not be subject to use tax because the costs are included in the price of the vehicle, which is subject to sales tax. Under MCL 205.94(l)(a), no use tax is owed on retail sales subject to sales tax. However, this exemption applies only if the parts are included in a “sale at retail,” i.e., “a transaction by which the ownership of tangible personal property is transferred for consideration. . . .” MCL 205.51(l)(b). Because I cannot agree that the goodwill parts are transferred for consideration, I must respectfully dissent.
I
Plaintiff directs its dealers to make goodwill adjustments case by case “where special consideration is in order to enhance customer satisfaction and loyalty.”[1] Most dealers have the discretion to provide repair parts free or at a reduced rate to consumers after the *244 original warranty expires.[2] These repairs are provided to select customers who are unsatisfied with defective parts after the manufacturer’s warranty expires.
Consumers are not given any general or specific information concerning the goodwill program and are informed in the warranty manual of their right to contact plaintiff after the manufacturer’s warranty expires if they are dissatisfied with the dealer’s offered resolution. The written warranty also indicates that arbitration proceedings may be an option.[3] In essence, the consumer is given an opportunity to ask for free repair parts, but has no legal right to any specific repair and knows nothing of the goodwill policy program in general, or of its specific terms. Though plaintiff may agree to subject itself to arbitration pro *245 ceedings, consumers gain no legally enforceable right as a result of this program, a program purportedly “purchased” at the retail sale.
Consideration requires bargained-for legal detriment. Higgins v Monroe Evening News, 404 Mich 1, 20-21; 272 NW2d 537 (1978) (opinion by Blair Moody, Jr., J.). I agree with the majority that a discretionary promise must be exercised in good faith and that the reasonable execution of such a promise may constitute valid consideration. J R Watkins Co v Rich, 254 Mich 82, 84-85; 235 NW 845 (1931); Wood v Lucy, Lady Duff-Gordon, 222 NY 88; 118 NE 214 (1917). However, I am not convinced that plaintiff’s good-faith exercise of its discretionary power is sufficient to permit a finding of bargained-for consideration in this instance. A party relying on the good-faith exercise of another’s unilateral discretion generally has some knowledge of the scope of discretion involved and the potential benefits that might accrue. In this case, customers have little if any knowledge of what they allegedly bargained and paid for at the retail sale. I cannot fathom what rational, self-interested market participant would actually bargain for and purchase such a promise. If it came free with the purchase price, most would accept it, but almost no one would buy it.
Further, I am not sure that an arbitrator would have any reason to rule in favor of a customer if dissatisfaction actually resulted in an arbitration hearing. On the basis of the contract between the parties, the express warranty would have expired if a customer requested parts under the goodwill policy. The simple failure to purchase a supplemental warranty suggests plaintiff has absolutely no legal or good-faith duty to *246 repair defective parts after the warranty expires. The presence of express promises (original warranty) and the opportunity to purchase supplemental promises (extended warranty) evidence the parties’ intention that plaintiff escape liability for defects after the original warranty period expires. Because information concerning the terms of the goodwill policy is generally kept secret, I am not sure that a consumer could adequately plead his case to the arbitrator, assuming plaintiff agreed to participate. All a consumer is left with is the right to complain to plaintiff, and I believe it is a stretch to consider that sufficient consideration where such a right exists regardless of the goodwill policy. Therefore, I would hold that the goodwill policy adjustment program does not constitute valid consideration.[4]
*247 Even so, I agree that the cost of the goodwill policy parts has been factored into the retail cost of the car, and to that extent the goodwill parts are subject both to use and sales tax. Unfortunately, because the use tax statute exempts only costs transferred for consideration in a retail sale, the Legislature essentially failed to avoid pyramiding taxes where costs are factored into a product, but are not actually part of the consideration paid. MCL 205.51, 205.94(1)(e).[5]
II
I suspect the most appropriate and forthright method to analyze the goodwill program for tax purposes would be to conceive of the parts as promotional or gratuitous items. Plaintiff grants adjustments *248 “in order to enhance customer satisfaction and loyalty.” In essence, the goodwill policy is a select form of advertising, i.e., a large scale version of the distribution of free pens and cups to conference participants or the provision of free pharmaceutical samples to physicians. Dealers probably grant the benefits of the discretionary goodwill program to those customers most likely to experience enhanced manufacturer loyalty. Because the program most resembles a marketing or customer satisfaction offer, and because there is no general statutory exemption for promotional items from use tax in Michigan,[6] I would permit defendant to assess use taxes, assuming it does so in a uniform fashion. See Virginia Dep’t of Taxation v Miller-Morton Co, 220 Va 852, 859; 263 SE2d 413 (1980) (when a distributor of products withdrew products from inventory within the state for free disposition to customers also within the state, the distributor exercised a power incident to ownership of the products, and this use of products previously held for resale was not within the exemption from use tax).
III
The majority permits a lax interpretation of consideration in order to bridge the gap between the text of the statute and the general desire to avoid duplicate *249 taxation. While the end might be worthwhile, the method arguably creates an empty definition of consideration that could affect future bargainers. Rather than compensate for the legislative failure to exempt all product costs from use tax by watering down our understanding of consideration, I would hold that the repair parts are not included in the retail sale for which consideration is paid.
Kelly, J., concurred with Cavanagh, J.

 Gm Service Bulletin No. 57-05-01, April 1995.

 Plaintiff provides specific negotiation tactics:
In situations beyond the warranty period, but within your claim authorization empowerment, customers have received a value from use of the vehicle. It would be reasonable to consider partial payment by the customer. The judgment belongs to you.
* * *
In those cases which warrant a Policy Adjustment, there is seldom a reason for Buick to pay the entire amount. Never lose sight of the fact that the owner has driven the vehicle for the life of the warranty, and then some. Unquestionably, the customer has received some value from the investment. Do not hesitate to bring this up during the negotiation.
Dealers are also advised to “determine what the owner expects . . . evaluate the . . . complaint. . . [and] [determine if the customer will be satisfied with any offer you might make.”

 Contrary to the implication by the majority, plaintiff’s participation in arbitration is in no way guaranteed. While a consumer may always request arbitration, plaintiff reserves the right to refuse to participate. See 1990 Warranty and Owner Assistance Information for Buick New Cars (“gm will generally agree to be bound by the arbitrator’s decision .... [gm] reserves the right to change eligibility limitations and/or to discontinue its participation in the program” [emphasis added]).

 Like the majority, I respect the doctrine that generally prohibits courts from questioning the adequacy of consideration. Unfortunately, that doctrine is inapplicable here because absolutely no consideration for the goodwill parts passed between the parties at the retail sale. Merely because plaintiff proved through its accounting methods that it charges all consumers for costs associated with a program that results in free or discounted parts to some, I cannot conclude that “consideration” was paid by purchasers at the retail sale for goodwill parts. Gm’s $82 million dollars worth of repairs, while certainly of value, simply cannot be regarded as legal consideration.
Further, the majority implies that any cost factored into the price of the car by gm should be exempt from use tax. If that were the case, no manufacturer would ever pay use tax because generally all costs work their way into the price of products. The statute as currently drafted does not provide an exclusion per se for all costs factored into product prices, only those for which consideration has passed at a retail sale. See MCL 205.94(l)(a), 205.51(l)(b).
The majority also presumes that a customer can pinpoint the costs associated with a program it knows nothing of and buy the car in part on the basis of the promised value associated with the goodwill policy. The error lies in that assumption. We cannot assume market participants are making rational choices when they lack sufficient knowledge of the goodwill policy. Neither GM nor the dealer bargains over this product with the consumer. Gm keeps the terms and scope of the program confidential, *247 thereby making it impossible for a consumer to pay for such a program with consideration. The majority’s attempt to rebut my position ignores the foundational principles of consideration, i.e., bargained-for consideration is absent where “the action that the promisee took was not induced by the promise.” Farnsworth, Contracts, (2d ed), § 2.6, p 52 (emphasis in original). In this case, plaintiff simply fails to give consumers an opportunity to be induced by the alleged benefit.

 In an attempt to refute my position, the majority erroneously infers the following:
[T]he dissent would decline to rule that gm’s promise is valid consideration in part because gm’s customers have “little if any” knowledge of the scope of gm’s discretion. Id. That it is unknown how liberally GM will exercise its discretion does not mean there is no discretion. In fact, it means there is discretion, i.e., a benefit to the consumer. [Ante at 240.]
To clarify, I conclude that gm’s parts cannot constitute valid consideration because the consumers did not bargain for, and were not induced to act because of, the goodwill policy in general or the parts in particular. Moreover, I agree that GM has discretion. In fact, GM has so much discretion that it would be impossible for consumers to bring an action claiming that discretion was exercised without good faith. The majority errs by inferring from my statement that describes a consumer’s lack of knowledge concerning the scope of gm’s discretion that the existence of discretion is itself dispositive of the inquiry.

 MCL 205.94(l)(c) exempts from use tax certain promotional items, which include:
[Promotional merchandise transferred pursuant to a redemption offer to a person located outside this state or any packaging material, other than promotional merchandise, acquired for use in fulfilling a redemption offer or rebate to a person located outside this state. [Emphasis added.]