## Richmond

LITTLE BAY CORPORATION v. VIRGINIA ELECTRIC AND POWER COMPANY.

December 1, 1975.

Record No. 741185.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*H. Joel Weintraub* (*Melvin Friedman; Steingold, Steingold & Friedman,* on brief), for appellant.

*Joseph L. Kelly, Jr.* (*Williams, Worrell, Kelly & Greer,* on brief), for appellee.

CARRICO, J., delivered the opinion of the court.

At issue in this case is the application of Article IX, Section 4 of the Constitution of Virginia. The constitutional section, while providing an appeal of right to this court from any final finding, order, or judgment of the State Corporation Commission, also provides that no other court of this Commonwealth shall have jurisdiction to review, reverse, correct, or annul any action of the Commission. The question for decision here is whether, in light of Article IX, Section 4, the trial court had jurisdiction to entertain a breach of contract action in which the court, to award damages for the breach, necessarily would have been required to review and annul an order of the Commission.

The present action was brought by Little Bay Corporation against Virginia Electric and Power Company to recover $4,900 in damages for the alleged breach of a 1970 contract between the parties. In the contract, it was alleged, VEPCO agreed to pay Little Bay "installation allowances and related advertising allowances" for Little Bay's use of electric heat in 28 dwelling units under construction in the City of Norfolk.

To Little Bay's action, VEPCO filed a "Plea to Jurisdiction," alleging that the Commission had ordered cessation of installation and advertising allowances and that "no Court other than the Supreme Court of Virginia has jurisdiction to review, reverse, correct or annul said order of the . . . Commission." After a hearing, the trial court sustained VEPCO's "Plea to Jurisdiction" and dismissed Little Bay's action.[1]

The record shows that, for a number of years prior to 1970, VEPCO had engaged in a promotional program designed to induce use of electric service to the exclusion of other types of energy. The program took the form of monetary allowances for use of electric equipment and appliances and of credits, based upon anticipated revenue, for installation of underground electric facilities.

In 1966, the Commission undertook an investigation of the promotional practices of the electric and gas utilities in Virginia. Later in the same year, the General Assembly amended Code § 56-247 to provide that the Commission "shall investigate the promotional allowances and practices of public utilities and shall take such action as such investigation may indicate to be in the public interest." [2] As a result of its 1966 investigation, the Commission directed each electric and gas utility to file and thereafter adhere to a schedule describing its promotional activities and allowances.

In 1970, the Commission undertook another investigation of the promotional activities of public utilities. On February 17 of that year, the Commission directed the electric and gas utilities to show cause why it should not disapprove "further use of promotional allowances

---

[1]VEPCO also filed, and the trial court sustained, a "Plea of Illegality," which alleged that the order of the Commission had rendered unlawful the payment of installation and advertising allowances. In the view we take of the case, it is unnecessary to consider the "Plea of Illegality."

[2]Little Bay, for the first time on appeal, makes an oblique attack upon the amendment to Code § 56-247 as lacking in standards to guide the Commission in determining what is in the public interest. Even before the amendment, however, § 56-247 vested the Commission with full authority to investigate and correct the "practices" and "acts" of public utilities.

and underground electric service plans which provide for credit for anticipated revenue." After a hearing, the Commission, on April 15, 1970, entered an order prohibiting the electric and gas utilities from offering or making any payment to influence the use of any equipment or appliances and from offering or giving any credit, based upon anticipated revenue, for installation of underground facilities. To provide for "an orderly phase-out of existing programs," the order exempted, so far as is pertinent here, commitments for allowances for appliances and equipment to be installed in new dwelling units under construction on December 31, 1970.

On February 1, 1971, VEPCO informed Little Bay by letter that it had inspected Little Bay's construction site in Norfolk and found 28 dwelling units under construction as of December 31, 1970. VEPCO stated in the letter that it would "allow the appropriate installation allowance for these 28 units" that qualified when they were completed and connected to VEPCO's lines.

On June 28, 1972, in a separate case involving an application by VEPCO to increase its rates, the Commission disallowed as an operating expense the amount of installation allowances VEPCO had paid during the year 1971. Then, on July 13, 1972, the Commission entered the order which is now under attack, prohibiting VEPCO from making further payments of "installation allowances or related advertising allowances with respect to any premises to which permanent electric service shall not have been connected before August 1, 1972."

None of Little Bay's 28 dwelling units was permanently connected to VEPCO's lines until several months following August 1, 1972. After the units were connected, VEPCO, according to the allegations of the present action, refused to pay the installation allowances although Little Bay had completed construction on its property "in accordance with all provisions of its contract with VEPCO."

In sustaining VEPCO's "Plea to Jurisdiction," the trial court held that the relief prayed for by Little Bay could not "be granted without reviewing, reversing or annulling [the] order of the State Corporation Commission . . . dated July 13, 1972," which, the trial court further held, it was "without jurisdiction to do." On appeal, Little Bay concedes that, to grant the relief it sought, the trial court would have been required to "review" the July 13, 1972 order of the Commission and "to determine its constitutionality." Little Bay contends, however, that Article IX, Section 4 does not prohibit such review and de-

termination by a trial court where an action of the Commission is "challenged collaterally," but only where a direct attack is made upon Commission action. Thus, Little Bay asserts, while Article IX, Section 4 would preclude it "from suing the [Commission] in the Circuit Court in an attempt to overturn its Order," the constitutional section does not oust the trial courts of jurisdiction to entertain breach of contract actions in which orders of the Commission are attacked only collaterally. The trial court, therefore, should have taken jurisdiction of its claim, Little Bay concludes, declared the Commission's July 13, 1972 order unconstitutional as an unlawful impairment of contract, and awarded damages for VEPCO's breach.

We disagree with Little Bay. We believe the prohibition of Article IX, Section 4 applies whether Commission action is attacked directly or collaterally. If, in either case, the challenge requires review leading to reversal, correction, or annulment of Commission action, the constitutional section, in no uncertain terms, forecloses jurisdiction to any Virginia court save this tribunal.

Neither is the result different because the challenge to Commission action arises in the prosecution of a common law contract claim. If, to grant relief upon such a claim, a trial court would be required to review and reverse, correct, or annul any action of the Commission, Article IX, Section 4 would oust the court of jurisdiction.

But, Little Bay argues, to deny it access to the trial court to prosecute its contract claim would "mean that there is no judicial forum to which it can turn." Little Bay could have intervened, however, in the proceedings before the Commission, voiced its objections to the proposed action to terminate payment of installation allowances, and, if unsuccessful, appealed to this court. If successful in its efforts before this court to overturn the Commission's July 13, 1972 order, Little Bay then could have proceeded in the trial court, unfettered by the Commission's order, to prosecute its contract claim against VEPCO.

This is not to say, however, that the Commission would have had jurisdiction to adjudicate Little Bay's common law contract claim. Indeed, we expressly held in *Appalachian Power Co. v. Walker*, 214 Va. 524, 201 S.E.2d 758 (1974), that the Commission has no such jurisdiction. What we do say is that where an order of the Commission has not been reversed, corrected, or annulled by this court and the order would prohibit recovery upon a common law contract claim, Article IX, Section 4 stands as a jurisdictional bar to the power of

other Virginia courts to review and reverse, correct, or annul the order in any action upon the claim.

Little Bay argues, however, that *Appalachian Power Co.* v. *Walker, supra,* "stands for the proposition that the circuit courts have jurisdiction over common law contract claims, notwithstanding the orders of the [Commission]." We disagree with Little Bay's analysis of the *Walker* holding.

In that case, Walker sought in the Circuit Court of the City of Lynchburg to recover damages from Appalachian for the latter's refusal to install, free of charge, underground electric facilities in Walker's subdivision. Appalachian asserted by plea that the Commission, because of its April 15, 1970 order prohibiting further allowance of credits for underground installation, had exclusive jurisdiction to adjudicate Walker's claim. The trial court overruled the plea, and this court, holding that the Commission had no jurisdiction over the claim, affirmed the overruling of the plea.

In a trial upon the merits, Walker was permitted to recover from Appalachian. The April 15, 1970 order of the Commission contained an exception, not applicable here, permitting completion of written contracts entered into before the date of the order. Walker's common law contract claim was based upon the theory that Appalachian had not only agreed to install, free of charge, underground electric facilities in Walker's subdivision but had further agreed, yet had failed, to reduce the contract to writing prior to April 15, 1970, so that the agreement would have come within the "written contract" exception to the Commission's order. Upon this theory, the trial court permitted Walker to recover from Appalachian, and this court affirmed the recovery.

The July 13, 1972 order of the Commission, now under attack, was not involved in *Walker*. Indeed, that order had not been entered at the time the *Walker* litigation was instituted. Neither was the validity of the April 15, 1970 order of the Commission an issue in *Walker*. In fact, all parties concerned conceded the validity of the 1970 order.

It is significant to our discussion here that not only was the validity of the Commission's April 15, 1970 order conceded by all concerned in *Walker* but also that the jurisdictional bar of Article IX, Section 4 was not involved in the case in any way. So far as it is pertinent to consideration of this type case, *Walker* does not detract from the proposition that only where a trial court can determine that it may

grant relief under an exception to a Commission order or without reviewing and reversing, correcting, or annulling Commission action, would the court have jurisdiction of a common law contract claim.

Finally, we reach a challenge issued by Little Bay. Here, Little Bay argues that unless we are ready to reverse our decision in *Citizens Mutual Building Association* v. *Edwards*, 167 Va. 399, 189 S.E. 453 (1937), we "must find that the lower court erred when it refused to take jurisdiction over Little Bay's suit against VEPCO."

In *Edwards*, we held that the jurisdictional bar of what is now Article IX, Section 4 did not prohibit the trial court, in an action upon a bond, from granting relief where it was necessary to declare unconstitutional an act of the General Assembly upon which was based an order of the Commission indefinitely suspending payment of the bond. The trial court, we said, "did not 'review, reverse, correct or annul' " the order of the Commission. What the trial court did review and annul, we further stated, was the statute itself, which directed the action taken by the Commission, and not the action of the Commission.

We do not depart from our holding in *Edwards*. It does not follow, however, that the trial court should have assumed jurisdiction of the present case. Although Little Bay now says it was "the constitutionality of the statute by which the [Commission] purported to act" that "the lower court was in effect being asked" to review, the record does not support this statement. To the contrary, the validity of the legislation in question, the 1966 amendment to Code § 56-247, which Little Bay now contends lacks proper standards (see note 2, *supra*), was not put in issue in the trial court. It remains, therefore, that, to grant the relief sought by Little Bay, the trial court would have been required to review and annul the Commission's order of July 13, 1972, which, as the trial court held, it was "without jurisdiction to do." So we reject Little Bay's challenge, and affirm the judgment of the trial court.

*Affirmed.*