Edward **GAHRES**, M.D., et al., Plaintiffs,

v.

**PHICO INSURANCE COMPANY**, Defendant.

Civ. A. No. 87–637–A.

United States District Court, E.D. Virginia, Alexandria Division.

Oct. 16, 1987.

**250**

John D. Grad, Alexandria, Va., for plaintiffs.

Fred C. Alexander, Jr., E. Duncan Getchell, Jr., McGuire, Woods, Battle & Boothe, Alexandria, Va., for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

## I. INTRODUCTION

In this suit, 140 physicians allege that defendant Phico Insurance Company (PHICO) perpetrated a fraud on the Virginia State Corporation Commission (SCC) to win approval for higher premiums and then breached a contractual or quasi-contractual duty owed to plaintiffs by refusing to renew their medical malpractice insurance. PHICO moves for a judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P. For the reasons stated below, this Court dismisses plaintiffs' Complaint under Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted.

Plaintiffs are citizens of Virginia, Maryland, or the District of Columbia. Defendant PHICO is a Pennsylvania corporation with its principal place of business in Mechanicsburg, Pennsylvania. Jurisdiction is premised upon 28 U.S.C. § 1332 (diversity), and venue is proper under 28 U.S.C. § 1391.

This Court, in diversity, sits as a state trial court would in entertaining state law claims. *Guaranty Trust Co. v. York,* 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945). Thus, for the purposes of this action, the function of the Court is to predict what law "would be applied by the Virginia Supreme Court were this case before it." *Nature Conservancy v. Machipongo Club, Inc.,* 579 F.2d 873, 875 (4th Cir.1978), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 724, 58 L.Ed.2d 706 (1978).

## II. PLAINTIFFS' ALLEGATIONS [1]

Plaintiffs are doctors who purchased medical malpractice insurance from PHICO. All plaintiffs practice in groups of nine or fewer physicians.

In April 1986, PHICO, while carrying plaintiffs' policies, applied to the Virginia State Corporation Commission Bureau of Insurance (SCC) for permission to increase its insurance premium rates. Permission was granted on July 1, 1986. Less than a week later, on July 7, 1986, PHICO announced to all doctors practicing in groups of nine or fewer physicians that their medical malpractice insurance would not be renewed effective November 1, 1986.

PHICO, it is alleged, always intended to refuse to renew the policies of all physicians practicing in groups of nine or fewer. Yet when seeking its rate increase, PHICO failed to disclose this to the SCC. Rather, PHICO used the claims data for these small practice groups and plaintiffs' policies as "ammunition" in obtaining its rate increase.[2] Once it succeeded, PHICO refused to renew these policies. Plaintiffs had no time to locate alternative sources of insurance and were forced to renew with PHICO at substantially higher rates. In addition, plaintiffs paid higher rates for "tail coverage," *i.e.* coverage for claims made in the future that are based on plaintiffs' treatment during the period of PHICO's original coverage.

Plaintiffs assert three causes of action: (1) PHICO breached an implied contractual duty of good faith and fair dealing in failing to renew plaintiffs' policies after obtaining a rate increase that was based, in

---

1. Plaintiffs' allegations must be taken as admitted for the purposes of this motion. *See Adams v. Bain,* 697 F.2d 1213 (4th Cir.1982).

2. Presumably the claims experience relating to small practice groups was material to PHICO's successful argument for an increase in the level of malpractice premiums.

part, upon PHICO carrying these policies; (2) PHICO will be unjustly enriched from the rate increase it obtained from the SCC; and (3) PHICO engaged in fraudulent acts against the SCC and plaintiffs.

Plaintiffs claim that if PHICO had disclosed to the SCC that it did not intend to renew plaintiffs' policies, then PHICO would have received a smaller rate increase or no rate increase and plaintiffs' premiums would have been lower. Plaintiffs thus seek compensatory damages in an amount sufficient to put the plaintiffs in the position they would have been but for PHICO's illegal actions. Plaintiffs also seek compensatory damages for harm plaintiffs have suffered as a result of PHICO's misrepresentations[3] as well as punitive damages for PHICO's malicious, fraudulent acts.

Before addressing these novel issues, the Court must first dispense with plaintiffs' assertion that PHICO cannot move for a judgment on the pleadings because the pleadings are not yet "closed" as required by Fed.R.Civ.Pro. 12(c). PHICO filed its motion on September 28, 1987. Plaintiffs filed their amended complaint on September 29, 1987. Because PHICO has not yet answered the amended complaint, plaintiffs contend that a judgment on the pleadings is premature.

Plaintiffs' assertion is technically correct; a 12(c) motion is inappropriate at this stage of the proceeding. However, as it is empowered to, this Court chooses to treat PHICO's 12(c) motion as a 12(b)(6) motion. *See* 5 Wright & Miller, Federal Practice and Procedure § 1369 (1969). Also, plaintiffs ultimately consented to allow PHICO's 12(c) motion to be heard as a 12(b)(6) motion.

## III. ANALYSIS

### A. *Subject Matter Jurisdiction*

■ A threshold, dispositive issue is whether the Virginia Constitution ousts this Court of any jurisdiction over plaintiffs' claims. It does. Article IX, Section 4 grants the Supreme Court of Virginia exclusive jurisdiction over appeals seeking review or reversal of SCC orders such as the rate increase approval at issue here. It states, in pertinent part, that:

[A]ny party aggrieved by any final finding, order or judgment of the Commission shall have, by right, an appeal to the Supreme Court. ... All appeals from the Commission shall be to the Supreme Court only.

No other court of the Commonwealth shall have jurisdiction to review, reverse, correct, or annul any action of the Commission....

Va. Const. art. IX, § 4. In order to award plaintiffs the relief they seek, this Court would necessarily be required to review an SCC order and hold that such an order was incorrect. Any damages would be tantamount to a rollback of an SCC approved rate. This the Court cannot do because of the jurisdictional restraints placed upon it by the Virginia Constitution.

This holding finds support in the Virginia Supreme Court case of *Little Bay Corp. v. VEPCO*, 216 Va. 406, 219 S.E.2d 677 (1975). There, plaintiff Little Bay brought an action against VEPCO in a state circuit court for breach of contract, asserting that VEPCO owed certain promotional allowances to Little Bay for its installation of electric heat in dwellings it constructed.[4] Subsequent to the contract the SCC held these allowances unlawful and enjoined them. VEPCO therefore filed a "Plea to Jurisdiction," claiming that only the Virginia Supreme Court had jurisdiction to reverse an order of the SCC pursuant to Article IX, § 4 of the Virginia Constitution. 219 S.E.2d at 678. The trial court sustained VEPCO's jurisdictional plea.

On appeal, Little Bay contended that Article IX, § 4 applied only where an SCC

---

**3.** It is alleged that some plaintiffs will be forced to curtail or terminate their practices because of the increased premiums.

**4.** Prior to 1970, VEPCO had engaged in a promotional program designed to induce use of electric service to the exclusion of other types of energy. This program took the form of monetary allowances for use of electric equipment, installation, and advertising. *Little Bay*, 219 S.E.2d at 678.

action was challenged *directly*. Since Little Bay, as it viewed matters, sought to reverse an SCC order *collaterally*, in a breach of contract action, the constitutional limitation did not apply. The Virginia Supreme Court disagreed with Little Bay's analysis, stating that the prohibition of Article IX, § 4

> applies whether the [SCC] action is attacked directly or collaterally. If, in either case, the challenge requires review leading to reversal, correction, or annulment of [SCC] action, the constitutional section, in no uncertain terms, forecloses jurisdiction to any Virginia court save [the Virginia Supreme Court].

219 S.E.2d at 679.

*Little Bay* is dispositive. Here, as there, plaintiffs seek, in effect, a reversal, correction, or annulment of an SCC order. Indeed, plaintiffs' claims are premised upon the allegation that the rate increased granted by the SCC was improper and fradulently obtained. In order to award plaintiffs the relief they seek, this Court would necessarily be required to review an SCC order and hold that such an order was improvidently issued.[5]

Under Virginia Code § 38.2–1906(B), PHICO *must* charge the rates set by the SCC.[6] For this Court to award plaintiffs any relief, it must, in effect, rule that PHICO *cannot* charge the rates set by the SCC. Such a ruling would conflict with the mandate of section 1906(B) and would amount to a judicial rollback of PHICO's rates. Only the SCC or the Virginia Supreme Court is empowered to take such action.

Nor is it of any consequence that plaintiffs have fashioned their claims to resemble a common law breach of contract action. A wolf in sheep's clothing remains a wolf; an attack on the SCC order, even if dressed up as a contract claim, remains an attack on an SCC order. As stated in *Little Bay,*

> [n]either is the result different because the challenge to [SCC] action arises in the prosecution of a common law contract claim. If, to grant relief upon such a claim, a trial court would be required to review and reverse, correct or annul any action of the [SCC], Article IX, § 4 would oust the court of jurisdiction.

219 S.E.2d at 679. It follows, therefore, that plaintiffs here cannot avoid the effect of Article IX, § 4 of the Virginia Constitution by fashioning, however ingeniously, a novel cause of action for breach of an implied contractual duty of good faith. This Court cannot, by any means, judicially reinstate PHICO's former rates. In sum, *Little Bay* controls and Article IX, § 4 ousts this Court of jurisdiction.[7]

Quite apart from this issue, PHICO also attacks the sufficiency of plaintiffs' three causes of action. In the interests of good judicial husbandry, these arguments are now addressed in the event another court concludes this Court has erred on the jurisdictional issue.

### B. *Breach of Contract Claim*

Plaintiffs assert that PHICO's fraud on the SCC constitutes a breach of its contractual duty to plaintiffs of good faith and fair dealing. According to plaintiffs, this duty included an obligation to inform the SCC that PHICO intended to refuse to renew plaintiffs' policies. Instead, PHICO allegedly sought a rate increase on the strength

---

5. *See also City of Alexandria v. R, F & P R.R. Co.,* 223 Va. 293, 288 S.E.2d 457 (1982) (SCC order can only be reviewed by the Supreme Court); *Forest Grove Services Corp. v. Prince William County,* No. 840758 (Cir.Ct. Prince William County 1987) (same).

6. Virginia Code section 38.2–1906(B) provides, in pertinent part, that:

   No insurer shall make or issue an insurance contract or policy of a class to which this chapter applies, except in accordance with the ... rate filings that are in effect for the insurer.

Va. Code Ann. § 38.2–1906(B) (Repl. Vol. 1986).

7. The Court's holding does not imply that *every* order of the SCC is unreviewable in federal court. This case presents no federal claim and hence does not call upon this Court to decide what result should obtain if the Virginia provision were to clash with a federal statutory or constitutional claim. This opinion does not address and this Court does not decide whether federal court jurisdiction would exist in a case, for example, in which an SCC order was claimed to be in violation of the federal constitution or antitrust laws.

of false data, data that reflected the claims experience of plaintiffs and other physicians practicing in small groups (fewer than nine), even though PHICO always intended not to renew the policies of these physicians. PHICO thus acted in bad faith in choosing not to renew plaintiffs' policies.

The issue before the Court is whether, under Virginia law, PHICO had a duty of good faith and fair dealing in exercising its rights under the non-renewal clause. Plaintiffs ask the Court to impose such a duty on PHICO pursuant to the holding in *Murphy v. Seed–Roberts Agency, Inc.*, 79 Mich.App. 1, 261 N.W.2d 198 (1977). There, defendant insurance company offered plaintiffs, 78 licensed physicians, a group malpractice insurance policy. Shortly after individual certificates of insurance were delivered to plaintiffs, the insurer attempted to amend them to provide only one year of coverage at an increased premium, then sent cancellation notices to each plaintiff pursuant to the policies' 90–day cancellation clause. The cancellation notices included an offer to reinstate the insurance for one year but only upon payment of a new, much higher premium. 261 N.W.2d at 200. Plaintiffs brought an action against the insurer, claiming that it breached an implied duty of good faith and fair dealing in exercising the cancellation clause.

The issue on appeal was whether the insurance company had a duty of good faith and fair dealing in exercising a cancellation clause that plainly and unambiguously gave the insurer the right to cancel at any time and for any reason. The Michigan appellate court recognized that such a duty might exist, because "public policy considerations may void an attempted cancellation of an insurance policy, even under an unrestricted contractual right of cancellation." 261 N.W.2d at 204. For support, the *Murphy* court cited *J.R. Watkins Co. v. Rich*, 254 Mich. 82, 84, 235 N.W. 845 (1931), where the Michigan Supreme Court stated that cancellation provisions at the option of a party are valid, "[b]ut where the relationship is commercial and does not involve fancy, taste, ... or other personal

features, the option may be exercised only in good faith." *Id., cited in Murphy*, 261 N.W.2d at 204. Plaintiffs urge this Court to adopt the rationale in *Murphy* and related cases [8] and hold that PHICO does have an implied duty of good faith and fair dealing with respect to the policies' non-renewal clause.

Yet *Murphy* and the other cases plaintiffs cite are inapposite. *Murphy* concerned as insurer's exercise of a *cancellation clause*. Here, however, PHICO has exercised its rights under a *non-renewal* clause. This difference is significant. When an insurance company exercises its rights under a cancellation clause, there is, then existing, a contractual relationship between the parties. By contrast, when an insurance company choses not to renew a policy, it has already fully performed the contract; there is no obligation that remains or persists beyond the term of the contract. The *Murphy* line of cases, all dealing with *cancellation*, not non-renewal, are therefore ultimately unpersuasive.

This analysis finds support in *Coria v. Florida Medical Association, Inc.*, 429 So.2d 23 (Fla.App.Ct.1983). There, plaintiffs' claimed that a medical malpractice insurer breached an implied duty of good faith in failing to renew plaintiffs' insurance. The court recognized that an implied covenant of good faith and fair dealing inheres in medical malpractice insurance contracts, but held that where an insured's original policy expired and the insurer had neither a duty to renew the policy nor an obligation to issue a new one, judgment on the pleadings in favor of the insured was proper. *Id.* at 23.

■ Here, as in *Coria*, the insurer has no duty to renew the policies. Neither the common law of Virginia nor the Code of Virginia imposes a duty on medical malpractice insurers to renew their policies. By contrast, however, the Virginia Code does impose a duty on insurers to renew other types of insurance policies. For example, Virginia Code § 38.2–2217.1 *requires* the renewal of liability insurance coverage for motor vehicles used for "van-

---

**8.** *See also L'Orange v. Medical Protective Co.*, 394 F.2d 57 (6th Cir.1968); *Spindle v. Travellers Insurance Co.*, 66 Cal.App.3d 951, 136 Cal.Rptr. 404 (1977).

pooling."[9] The fact that the Virginia legislature imposes a duty to renew where it sees fit indicates to this Court that, in the absence of Virginia law to the contrary, medical malpractice insurers have no duty to renew. Therefore, this Court holds that, under Virginia law, there exists no implied contractual duty of good faith and fair dealing with respect to an unambiguous non-renewal clause.[10]

### C. *Unjust Enrichment*

■ Plaintiffs innovatively assert that because the SCC approved PHICO's rate increases on the basis of PHICO's fraud, then PHICO was unjustly enriched when plaintiffs paid the increased premiums. Again, plaintiffs are attempting a collateral attack on an SCC order. To hold that PHICO was unjustly enriched would necessarily entail a review and annulment of the SCC order granting the rate increase to PHICO. This the Court cannot do, pursuant to Article IX, § 4 of the Virginia Constitution.[11]

In support of their claim of unjust enrichment, plaintiffs cite a number of cases which hold that such a claim is universally recognized "where the person sought to be charged is in possession of money or property he should not retain, but should deliver to another." *Matarese v. Moore-McCormack Lines, Inc.*, 158 F.2d 631, 634 (2d Cir.1946). For this Court to award plaintiffs judgment based upon their claim of unjust enrichment, it would have to hold that PHICO is in "possession of money it should not retain," i.e., the increase in premiums. Yet this increase was granted by SCC order, and PHICO *must* charge the rate set by the SCC.[12] Therefore, to hold that PHICO was unjustly enriched and compel it to disgorge plaintiffs' money, this Court must effectively review and reverse

an SCC order. Such action is precluded by the Virginia Constitution.

### D. *Fraud*

Plaintiffs allege that PHICO engaged in fraud against them by virtue of PHICO's allegedly false filings before the SCC. Yet, plaintiffs have failed to allege or show how *they were directly* defrauded by PHICO.[13] Plaintiffs essentially allege "derivative fraud," *i.e.* PHICO defrauded the SCC through false public filings, and plaintiffs were derivatively defrauded because they are part of the public. This derivative fraud claim must fall for the same reason all plaintiffs' claims must fall: one cannot attack or seek review or annulment of an SCC order in any forum other than the SCC or the Virginia Supreme Court.

In oral argument, plaintiffs' counsel agreed with the Court that there would be no private cause of action in fraud if PHICO merely miscalculated the data that it presented to the SCC. This hypothetical underscores the fact that the gravamen of plaintiffs' complaint is predicated upon a fraud committed against the SCC, *not* against plaintiffs directly.

Finally, if a claimant were allowed to "bootstrap" a *private* claim for fraud onto every alleged fraud occurring before the SCC in a public filing, the state and federal trial courts might be flooded with claims. Conceivably, thousands of complaints could be predicated on a single allegedly fraudulent or false filing. No such derivative fraud claim exists in Virginia law, nor is there any basis in law or principle for this Court to permit such a claim.

### E. *Remedies*

Plaintiffs assert that if they have no private cause of action against PHICO

---

**9.** Section 38.2–2217.1 provides that no insurer "shall cancel or refuse to renew a policy of liability insurance coverage for motor vehicles used in vanpooling." Va. Code Ann. § 38.2–2217.1(B). (Repl. Vol. 1986). Only under certain conditions may an insurer refuse to cancel or renew these policies. *Id.*

**10.** This Court does not hold, by implication, that a duty of good faith and fair dealing does indeed exist with respect to a *cancellation* provision. This issue is not before the Court.

**11.** *See* discussion *supra*, pp. 251–52.

**12.** *See supra* note 6.

**13.** As confirmed by plaintiffs' counsel in oral argument, plaintiffs do not allege fraud in the inducement. This claim, which was set forth in plaintiffs' original complaint, was withdrawn after discovery and was not alleged in plaintiffs' amended complaint.

based upon breach of contract, unjust enrichment, or fraud, then no remedy exists and PHICO is free to defraud the SCC at will. This is not so. Plaintiffs' remedies are clearly set forth in the Virginia Code. Pursuant to Virginia Code § 38.2–1909, the SCC may:

> investigate and determine, (i) upon its own motion, [or] (ii) at the request of any citizen of this Commonwealth, ... whether rates in this Commonwealth for the classes of insurance to which this chapter applies are excessive, inadequate, or unfairly discriminatory.

Indeed, Code § 38.2–1927 provides that *no* person:

> shall willfully withhold information from or knowingly give false or misleading information to ... the Commission ... if that information will affect the rates or premiums subject to this chapter.

If the SCC finds that a rate is unreasonably high or excessive, then under Code section 38.2–1910 the SCC may modify the rate and order a refund of the excessive portion of premiums collected.[14] Thus, plaintiffs' remedy is clear: request that the SCC investigate PHICO's rates and, if successful, seek a rollback of rates and a refund of excessive premiums.[15]

In addition, Virginia Code § 12.1–39 provides that any party aggrieved by any final order of the SCC "shall have, of right, an appeal to the Supreme Court irrespective of the amount involved, provided that the petition [is] filed ... within four months from the final judgment or finding of the SCC." Va.Code Ann. § 12.1–39 (Repl. Vol. 1985). Thus plaintiffs had yet another remedy under the Code and should have attempted to appeal the SCC order to the Virginia Supreme Court.[16]

## IV. CONCLUSION

Plaintiffs' attempt to frame claims cognizable in this court is as innovative as the circumstances are novel. To be sure, the alleged fradulent conduct of PHICO, if true, may deserve a remedy. But this is not the proper forum; the Virginia Constitution and statutes seem plainly to contemplate that matters of this sort be pursued initially before the State Corporation Commission and ultimately before the Supreme Court of Virginia. Other Virginia authorities, including the Attorney General, may also have an interest in pursuing this matter, or indeed a duty to pursue this matter. For the reasons stated herein, however, plaintiffs' Complaint must be dismissed.

An appropriate order will be entered.

---

14. Code Section 38.2–1910(A) provides, in pertinent part, that:
> A. If the Commission finds ... that a rate is not in compliance with 38.2–1904 ["Rate standards"] or is in violation of 38.1–1916 ["Certain conduct by insurers"], the Commission shall order the use of the rate to be discontinued.... The order may also provide for refund of the excessive portion of premiums collected....

Va. Code Ann. § 38.2–1910(A) (Repl. Vol 1986).

15. Counsel for plaintiffs correctly points out that there is a dearth of cases with respect to any remedy in the Virginia Code in this novel context. However, even if this Court's interpretation of the Code provisions is incorrect and plaintiffs have no administrative remedy, this Court still lacks jurisdiction to hear plaintiffs' complaint pursuant to Article IX, section 4, of the Virginia Constitution. See discussion *supra,* pp. 251–52.

16. Indeed, this remedy was discussed at length in *Little Bay,* 216 Va. 406, 408–09, 219 S.E.2d 677, 679. There, the court stated that Little Bay should have intervened in the proceedings before the SCC, voiced its objections, and, if unsuccessful, appealed to the Virginia Supreme Court. If this procedure had been followed and the order overturned, Little Bay then could have proceeded in the trial court to prosecute its contract claim against VEPCO "unfettered by the Commission's order." 219 S.E.2d at 679–80.

Here, plaintiffs might contend that they could not have intervened in PHICO's rate hearing because, at the time of the hearings, plaintiffs were unaware of PHICO's intention not to renew. Yet, plaintiffs still had post-hearing remedies available to them, as set forth in the text of this opinion. If unsuccessful before the SCC in asserting any post-hearing remedy, plaintiffs then could have appealed the adverse SCC determination pursuant to section 12.1–39.