PRESENT: All the Justices

ASHLAND, LLC

<table>
<tr><td></td><td>OPINION BY</td></tr>
<tr><td>v. Record No. 210800</td><td>JUSTICE WESLEY G. RUSSELL, JR.</td></tr>
<tr><td></td><td>OCTOBER 13, 2022</td></tr>
</table>

VIRGINIA-AMERICAN WATER COMPANY


FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
William Allan Sharrett, Judge

Ashland, LLC ("Ashland") appeals the circuit court's dismissal of its claim against

Virginia-American Water Company ("Virginia-American") for an alleged breach of contract.

Specifically, Ashland contends that the circuit court erred in concluding that Article IX, Section

4 of the Constitution of Virginia deprived the circuit court of jurisdiction to adjudicate Ashland's

contract claim. For the reasons that follow, we agree with Ashland, reverse the judgment of the

circuit court, and remand the matter for further proceedings consistent with this opinion.

## I. Background

Virginia-American is a private utility company that operates water plants, including one

in the City of Hopewell. It provides water to local customers, including Ashland, a chemical

manufacturer. Virginia-American provides its customers water service pursuant to a tariff issued

by the State Corporation Commission ("Commission").[1]

In 2018, Virginia-American undertook repairs at its Hopewell water plant. The repairs

involved installation of a bypass line that carried water near electronic equipment critical to

---

[1] "A tariff is a schedule of rates, rules, and regulations issued pursuant to an order of the [Commission]. It sets out the rates which a public utility must charge and the terms and conditions under which it is required to supply service to its customers." *Kroger Co. v. Appalachian Power Co.*, 244 Va. 560, 561 n.1 (1992). The tariff governing Virginia-American's provision of water is entitled "Rates, Rules and Regulations for Furnishing Water and Wastewater Service in the Territory Supplied by the Company in the City of Alexandria, City of Hopewell, [and Other Specified Areas]."

proper operation of the water plant. The bypass line ruptured, damaging the electronic equipment and rendering associated water pumps inoperative. The equipment failure caused an outage that disrupted water service to Ashland. During the outage, Ashland was unable to manufacture the chemicals it sells.

Alleging that the outage resulted in $515,000 in damages due to lost business and profits, Ashland filed suit against Virginia-American in the Circuit Court of the City of Hopewell. Ashland's complaint asserted a breach of contract claim based on an alleged violation of the tariff. Ashland relied on Rule 19(c) of the tariff, which provides that Virginia-American "will undertake to use reasonable care and diligence in order to prevent and avoid interruption and fluctuations in the service, but it cannot and does not guarantee that such will not occur." Ashland claimed that Virginia-American's placement of the bypass line near the electronic equipment constituted "a breach of its contractual duty to use reasonable care."

Virginia-American demurred to the complaint by asserting that other provisions of the tariff barred Ashland's claim. Virginia-American cited tariff Rule 8(f), which provides in part that Virginia-American "shall not, in any way or under any circumstances, be held liable or responsible to any party . . . for any losses or damage resulting from any . . . deficiency in . . . supply of water due to any cause whatsoever[,]" and Rule 17(a), which states that Virginia-American "does not guarantee a[n] . . . uninterrupted supply of water, and customers are cautioned to provide sufficient storage of water where an absolutely uninterrupted supply must be assured."

Although not initially raised by Virginia-American, the question of whether the circuit court had jurisdiction to hear Ashland's breach of contract claim arose during the briefing of and

2

argument about Virginia-American's demurrer.[2]  In its questions of counsel, the circuit court

explored whether it had jurisdiction to hear the matter or whether resolution of this type of

dispute was committed to the Commission.  The circuit court also provided the parties an

opportunity to brief the jurisdictional issue.

After taking the matter under advisement, the circuit court issued a letter opinion

addressing "whether [it] ha[d] subject matter jurisdiction to hear this case."  The circuit court

concluded that Ashland's "contention that jurisdiction is appropriate because it has brought a

contract action fails to properly interpret a 'tariff.'"  The circuit court explained, "[i]t remains

true that 'circuit courts have jurisdiction over common law contract claims' [and that] a tariff

'establishes the contractual relationship between the parties'[; y]et, these two truths do not mean

that a dispute over tariff provisions is merely a common law contract claim."  The circuit court

concluded that "while the two may appear to be similar, a tariff is not the equivalent of a

contract."

In further examining the issue, the circuit court referenced provisions of the Code that

govern consumer complaints about entities subject to Commission regulation.  It found that the

"statutes show a proclivity on the part of the General Assembly to place the [Commission] in

charge of controversies involving public utilities and customers."  Finally, and "[m]ost

importantly," the circuit court concluded that it lacked jurisdiction because Article IX, Section 4

of the Constitution of Virginia provides that only the Supreme Court may hear appeals of

decisions of the Commission and that "'no other court . . . shall have jurisdiction to review,

---

[2] In fact, when the issue of whether the circuit court had jurisdiction to hear Ashland's contract claim first arose, Virginia-American was adamant that the circuit court had jurisdiction over the claim and made clear that Virginia-American had "not asked [the circuit court] to hold that it lacks jurisdiction to decide this case."

reverse, correct, or annul any action of the Commission or to enjoin or restrain it in the performance of its official duties.'" Finding that the promulgation of a tariff by the Commission is an "'action'" of the Commission, the circuit court concluded that "[t]o sit for this controversy, [it] must 'review' the [t]ariff" and that it lacked the power to do so.

The circuit court memorialized its ruling in an order dated May 24, 2021. The order specified that, "[u]pon consideration of the pleadings, briefs, and argument, for the reasons stated in the [l]etter [o]pinion . . ., the [c]ourt finds that it lacks jurisdiction to address the merits of the controversy, including the merits of [Virginia-American's d]emurrer." On that basis, the circuit court dismissed Ashland's complaint.

Ashland noted an appeal to this Court, asserting that the circuit court erred in concluding that it lacked subject matter jurisdiction over Ashland's breach of contract claim and in declining to reach the merits of and ultimately overrule Virginia-American's demurrer. We granted Ashland's petition for appeal.

## II. Analysis

### A. Standard of review

Ashland's challenge to the circuit court's determination that it lacked jurisdiction over Ashland's breach of contract claim presents a question of law subject to de novo review in this Court. *Andrews v. Richmond Redevelopment & Hous. Auth.*, 292 Va. 79, 85 (2016). To the extent that the circuit court's determination regarding jurisdiction turned on its interpretation of the Constitution of Virginia, questions of constitutional interpretation also are questions of law subject to de novo review. *Montgomery Cnty. v. Virginia Dep't of Rail & Pub. Transp.*, 282 Va. 422, 435 (2011).

4

B.  Circuit court's ruling on jurisdiction

The Commission was created "to protect the public rights by regulating public utilities." *Newport News & O.P. Ry. & Elec. Co. v. Hampton Roads Ry. & Elec. Co.*, 102 Va. 847, 851 (1904).  Article IX, Section 2 of the Constitution of Virginia provides that "[s]ubject to such criteria . . . prescribed by law, the Commission shall have the power and be charged with the duty of regulating the rates, charges, and services and, except as may be otherwise authorized by this Constitution or by general law, the facilities of railroad, telephone, gas, and electric companies" and that it also "shall have such other powers and duties not inconsistent with this Constitution as may be prescribed by law."  The General Assembly has provided by statute for the Commission to exercise similar ratemaking and other regulatory authority over water companies like Virginia-American.  *See* Code §§ 12.1-12 & 56-261, et seq.; *see also City of Alexandria v. State Corp. Comm'n*, 296 Va. 79, 95 (2018).

The authority conferred upon the Commission by the Constitution and the General Assembly to set the rates for and otherwise regulate water companies is near plenary, subject to review only in this Court.  Entitled "Appeals from actions of the Commission[,]" Article IX, Section 4 of the Constitution of Virginia provides that "[a]ll appeals from the Commission shall be to the Supreme Court only" and that "[n]o other court of the Commonwealth shall have jurisdiction to review, reverse, correct, or annul any action of the Commission or to enjoin or restrain it in the performance of its official duties[.]"[3]

---

[3] Prior to the adoption of Article IX, Section 4 as part of the Constitution of 1971, a similar provision of the Constitution of 1902 governed appeals from the Commission. Specifically, Article XII, Section 156(d) of the Constitution of 1902 provided, in pertinent part, that

> [a]ll appeals from the [C]ommission shall be to the Supreme Court
> of Appeals only. . . .  No court of this Commonwealth (except the

Much as the Commission has been granted near plenary authority over matters committed to it by the Constitution or statute, circuit courts have, subject to an amount in controversy requirement, been given similar authority to adjudicate contract actions. Code § 17.1-513 provides that the circuit courts

> shall have original and general jurisdiction of all civil cases, except cases upon claims to recover personal property or money not of greater value than $100, exclusive of interest, and except such cases as are assigned to some other tribunal; . . . and also, of all cases, civil or criminal, in which an appeal may be had to the Supreme Court.[4]

As we previously have observed, "[t]o state the obvious, circuit courts have subject matter jurisdiction over contract disputes," *Pure Presbyterian Church of Washington v. Grace of God Presbyterian Church*, 296 Va. 42, 56 (2018), and exercise that authority "[u]nless ousted of jurisdiction by law." *Appalachian Power Co. v. John Stewart Walker, Inc.*, 214 Va. 524, 530 (1974). Thus, a circuit court has jurisdiction over a common law contract claim unless a provision of the Constitution or an enactment of the General Assembly strips it of that authority.

---

> Supreme Court of Appeals, by way of appeals as herein authorized), shall have jurisdiction to review, reverse, correct or annul any action of the [C]ommission, within the scope of its authority, or to suspend or delay the execution or operation thereof, or to enjoin, restrain or interfere with the commission in the performance of its official duties[.]

Although there have been some minor changes in wording, we, as pertinent to the issues raised in this appeal, discern no material difference in the relevant provisions of Article IX, Section 4 of the current Constitution and Article XII, Section 156(d) of the Constitution of 1902. Accordingly, our decisions decided under the prior constitutional provision remain viable authority for resolving this appeal.

[4] Ashland initiated its suit in 2019. The General Assembly amended Code § 17.1-513 in 2020 and 2021, *see* 2020 Acts ch. 903 (Reg. Sess.); 2021 Acts chs. 187, 489 (Spec. Sess. I). These amendments have no bearing on this case.

6

Given these potentially conflicting grants of jurisdiction, the proper characterization of Ashland's claim for damages is critical. Ashland characterizes its claim as nothing more than a common law breach of contract action with the tariff merely supplying the terms of the contract between the utility and its customer. Virginia-American asserts that Ashland's action cannot be characterized as a common law breach of contract action *because* the alleged obligations stem from the Commission-approved tariff, making it impossible for the circuit court to adjudicate the case without reviewing those terms in violation of Article IX, Section 4.

The circuit court correctly observed that there are differences between a tariff and the traditional commercial contract. The terms of a tariff are not the result of arms-length negotiations between a company and its customer. Rather, the terms of a tariff, including the rates set therein, are imposed on the utility and its customers by the Commission, which, in doing so, "is exercising a legislative function delegated to it by the General Assembly." *City of Alexandria*, 296 Va. at 94 (quoting *Old Dominion Comm. for Fair Util. Rates v. State Corp. Comm'n*, 294 Va. 168, 180 (2017)). Furthermore, in the case of a monopoly utility with a defined service territory, the customer's decision is to either accept these terms or go without service.

These differences, however, do not change the fundamental nature of the relationship between the utility and its customers. The relationship, in law and fact, is a contractual one with the obligations of the parties to one another defined by the terms of the tariff. As we have stated previously, a Commission-approved tariff "establishes the contractual relationship between the parties," the utility and its customer. *Kroger Co. v. Appalachian Power Co.*, 244 Va. 560, 562 (1992); *see also Po River Water & Sewer Co. v. Indian Acres Club of Thornburg, Inc.*, 255 Va. 108, 113-14 (1998). Accordingly, the fact that the obligations that Ashland alleges Virginia-

7

American breached stem from the Commission-approved tariff does not preclude Ashland's action from being one for common law breach of contract over which a circuit court could properly exercise jurisdiction.

Despite the contractual nature of Ashland's claim, Virginia-American maintains that Article IX, Section 4 precludes the circuit court from entertaining this suit because, "[i]n order to adjudicate Ashland's claim in the case at bar, the circuit court had to review – interpret, construe – the [Commission]'s action adopting the specific language of the [t]ariff." The circuit court essentially adopted this position—that it was precluded from hearing the matter if resolution of the claim involved reading, interpreting, or applying any portion of the tariff.

In the context of Article IX, Section 4 or the predecessor version found in Article XII, Section 156(d) of the Constitution of 1902, we have not read "review" as prohibiting a circuit court from reading, interpreting, or applying a tariff provision in common law actions between a utility and its customer. To the contrary, we consistently have allowed circuit courts to do so, as long as all the circuit court was required to do was read, interpret, and apply the tariff provisions. *See*, *e.g.*, *Po River*, 255 Va. at 114 (recognizing the ability of a circuit court to read and apply the provisions of a tariff to adjudicate a billing dispute between a utility and its customer by "comput[ing] the recipient's liability for payment at the rate set by the Commission for the customer class pertaining to that recipient"); *Kroger Co.*, 244 Va. at 562 (1992) (affirming a circuit court's decision to sustain a plea in bar based on "the single issue [of] whether the [t]ariff barred [the customer]'s negligence action against" the utility).

These cases reflect our longstanding understanding of "review" in the context of Article IX, Section 4 and its predecessor in the Constitution of 1902. Properly understood, these provisions prohibit any court of the Commonwealth (with the exception of this Court) from

addressing whether the Commission committed error in any action entrusted to the Commission by the Constitution or statute. That is, only this Court may engage in *judicial* review of an action of the Commission. Circuit courts are barred from considering whether the Commission exceeded its authority or otherwise erred in the adoption of a tariff; circuit courts remain free to read and then apply the terms of a tariff as adopted by the Commission as is necessary to resolve a common law dispute.

To hold otherwise would be to preclude any actions for damages between a customer and a utility over the underpayment or overpayment of a utility bill. After all, to determine whether a customer has paid too much or too little for utility service requires that some court read the tariff and determine what the customer actually owed under the terms of the tariff. As our cases demonstrate, we long have held that trial courts could adjudicate such cases without running afoul of either Article IX, Section 4 of the Constitution of Virginia or its predecessor, Article XII, Section 156(d) of the Constitution of 1902. *See*, *e.g.*, *Po River*, 255 Va. at 114; *Chesapeake & Potomac Tel. Co. of Virginia v. Bles*, 218 Va. 1010, 1010 (1978); *Massaponax Sand & Gravel Corp. v. Virginia Elec. & Power Co.*, 166 Va. 405, 407 (1936).[5]

---

[5] A conclusion that circuit courts do not have jurisdiction to hear such claims for damages would mean that no tribunal could hear such disputes. We consistently have held that the Commission lacks jurisdiction to resolve contract claims between utilities and their customers. *See*, *e.g.*, *Little Bay Corp. v. Virginia Elec. & Power Co.*, 216 Va. 406, 409 (1975); *Appalachian Power Co.*, 214 Va. at 533; *Sydnor Pump & Well Co. v. Taylor*, 201 Va. 311, 316-17 (1959) (Virginia law "does not empower the Commission to determine and adjudicate the rights and liabilities of parties to contracts between a privately owned water system and its consumer connectors. . . . The question whether [such] a contract has been breached is for the courts to determine."); *City of Lynchburg v. Commonwealth*, 164 Va. 57, 63-64 (1935); *Norfolk & Western Ry. v. Commonwealth*, 143 Va. 106, 113-14 (1925). The Commission has recognized this line of cases as well as the limitation on its powers they contain, holding that "[i]t is settled law in Virginia that this Commission is not the proper forum to award monetary damages for a breach of contract." *In re Global NAPS, Inc.*, Case No. PUC-2004-00067, 2006 WL 707023, at *3 (Va. S.C.C. Jan. 10, 2006).

Virginia-American argues that our decision in *Little Bay Corp. v. Virginia Elec. & Power Co.*, 216 Va. 406 (1975) suggests a different conclusion. To the contrary, our decision in *Little Bay* is wholly consistent with these prior cases and with our decision today.

In *Little Bay*, Little Bay brought a contract action against VEPCO. *Id.* at 407. Unlike the circumstance here, the action did not seek to require VEPCO to comply with a condition imposed by a tariff adopted by the Commission. Rather, it sought to require VEPCO to make payments that an order of the Commission specifically prohibited VEPCO from making. *Id.* at 408. In pursuing its action in the circuit court, Little Bay made clear that it was not attempting to enforce a contractual term grounded in a Commission-approved tariff, but rather, it was collaterally attacking the validity of an order of the Commission. *Id.* at 408-09. We affirmed the circuit court's conclusion that it lacked jurisdiction to hear Little Bay's claim because, no matter how it was presented, it was nothing more than an attack on a decision of the Commission. *Id.* at 409. Thus, our decision in *Little Bay* is wholly consistent with our conclusion here: circuit courts are free to read and then apply the terms of a tariff as adopted by the Commission as is necessary to resolve a common law dispute between a utility and its customer, but lack jurisdiction to resolve actions, even actions styled as contract disputes, that require the circuit court to determine whether the Commission erred in a matter entrusted to it by the Constitution or statute.

Here, Ashland's suit assumes that the adoption of the tariff by the Commission was appropriate and proper. Nothing in Ashland's suit calls into question any action of the

10

Commission. Accordingly, for the foregoing reasons, the circuit court erred in concluding that it lacked jurisdiction to hear Ashland's breach of contract action.[6]

## C. Virginia-American's demurrer

Having determined, albeit erroneously, that it lacked jurisdiction to even consider Ashland's breach of contract claim, the circuit court next concluded that it could not "address the merits of the controversy, including the merits of [Virginia-American's d]emurrer." Given our conclusion that the matter was properly before the circuit court and "[b]ecause the decision whether to grant a demurrer is a question of law," *Kaltman v. All Am. Pest Control, Inc.*, 281 Va. 483, 489 (2011), both Ashland and Virginia-American invite us to address the merits of Virginia-American's demurrer. We decline the invitation.

"As a general rule, we serve as 'a court of review, not of first view.'" *California Condo. Ass'n v. Peterson*, 301 Va. 14, 23 (2022) (quoting *Bailey v. Loudoun Cnty. Sheriff's Office*, 288 Va. 159, 181 (2014)). Because the circuit court's jurisdictional inquiry became the focus of the proceedings below, the arguments below as well as those in this Court focused on that question as opposed to the merits of Virginia-American's demurrer. Given the significance of that issue in this case, we believe that all would be best served by a full development of and argument

---

[6] In addressing the jurisdiction question in its letter opinion, the circuit court also referenced certain statutes. Specifically, the circuit court cited to Code §§ 56-6, 56-232, & 56-247.1(A)(3) as demonstrating "a proclivity on the part of the General Assembly to place the [Commission] in charge of controversies involving public utilities and customers." Although these statutes may provide for certain proceedings between utilities and their customers to be heard before the Commission, they neither expressly nor impliedly strip a circuit court of its jurisdiction to hear common law actions that fall outside of the Commission's purview. Any doubt that the General Assembly did not intend for these statutes to extinguish the ability of a customer or a utility to seek common law remedies in the courts of the Commonwealth is laid to rest by Code § 56-7, in which the General Assembly provides that "[n]othing contained in [Title 56] shall in any way abridge or alter existing remedies at common law or under any other statute, but the new remedies given shall be deemed to be in addition to those already existing."

11

about the issue below.  Thus, although "we have the appellate discretion to decide legal issues for the first time on appeal, we decline to do so in this case."  *Id.*

Accordingly, offering no opinion on Virginia-American's demurrer or the ultimate viability of Ashland's claim, we remand the matter to the circuit court for further proceedings consistent with this opinion.

### III.  Conclusion

For the foregoing reasons, the circuit court erred in concluding that it lacked jurisdiction over Ashland's breach of contract claim.  Accordingly, we reverse the judgment of the circuit court and remand the matter for further proceedings.

*Reversed and remanded.*